Jueces concurrentes: Sres. Presidente Quiñones y Asociados Hernández, Sulzbacher y MacLeary.

---

### EL PUEBLO *v.* REYES.

APELACIÓN procedente de la Corte de Distrito de Arecibo.

No. 9.—Resuelto en abril 27, 1904.

JUICIO POR JURADO—VEREDICTO.—Las deliberaciones del jurado deben ser absolutamente reservadas, porque ello constituye una garantía de la independencia y libertad del jurado, que contribuyen a que el veredicto sea reflejo fiel de las conciencias honradas, independientes y libres de los miembros del jurado.

ID.—DOCUMENTOS QUE PUEDE CONSIDERAR EL JURADO.—Al retirarse para deliberar, el jurado puede llevar solamente documentos o escritos que hayan sido recibidos como pruebas en el proceso, o copias de los mismos, cuando no deba privarse de ellos a las personas en cuyo poder se hallen.

ID.—VEREDICTO.—Comete error el juez que permite que el jurado, al retirarse a deliberar, lleve consigo un sumario de otro juicio, conteniendo documentos y declaraciones de testigos, perjudiciales al acusado, y que no se presentaron como pruebas en el juicio, y el veredicto en tales condiciones rendido, no puede prevalecer, pues no puede considerarse como producto de los elementos de prueba aquilatados en corte abierta, siendo de presumir que se ha engendrado con el examen de otras pruebas recibidas por el jurado fuera del tribunal.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. José C. Ramos.*

Abogado del apelado: *Sr. del Toro, Fiscal.*

EL JUEZ ASOCIADO SR. FIGUERAS, emitió la siguiente opinión del tribunal:

El recurrente en esta causa fué procesado en unión de (*) Juan Arroyo Adorno, Prisco Padilla y Tomás Colón Sánchez por aparecer complicados en la muerte violenta de Don Carlos

Ma. Alvarez, ocurrida en el barrio de Hato Viejo, término municipal de Ciales, el 5 de noviembre de 1898.

Siguió el sumario su curso natural, según el procedimiento que entonces regía; se declaró extinguida la acción penal, en cuanto a Colón Sánchez por haber fallecido, rebelde a Simeón Reyes y se suspendió en cuanto a él el procedimiento hasta que en 28 de diciembre de 1898, se dictó sentencia calificando el hecho de asesinato, estimando como autores a los procesados presentes Padilla y Arroyo y se les condenó a la pena de cadena perpetua con las accesorias del caso, indemnización a la familia del interfecto y al pago cada uno de una cuarta parte de costas. Esa sentencia se declaró firme por no haberse interpuesto contra ella recurso alguno dentro de los 10 días subsiguientes a su notificación.

En la madrugada del 17 de julio de 1903 fué capturado Simeón Reyes, que hoy es el recurrente. Conducido ante el tribunal de Arecibo se dió lectura a las conclusiones acusatorias del Fiscal y se preguntó al acusado si se confesaba autor del delito, pero contestó negativamente, añadiendo su abogado defensor que deseaba el juicio por jurados, a cuya pretensión se accedió.

El 18 de enero del corriente año se constituyó en debida forma el jurado, se practicaron las diligencias de prueba y declaron como testigos Prisco Padilla, Eulogio Colón, Enrique Valdivieso, Juan Galindez y Osvaldo Freites. El jurado, después de deliberar, manifestó por medio de su presidente, que no había veredicto porque siete habían votado en contra y cinco en pro. Expresó el juez su deseo de conocer los nombres de los que sostenían la una y la otra opinión y el Fiscal se opuso en razón a que las deliberaciones deben ser secretas. Se hizo constar dicha excepción y retirado el jurado de nuevo, regresó con un veredicto unánime declarando (*) al acusado culpable del delito de homicidio voluntario. En este estado solicitó el acusado un nuevo juicio que se le denegó, y por sentencia de 20 de enero último, se le condenó como autor de un

homicidio voluntario perpetrado en la persona de Don Carlos Ma. Alvarez, a la pena de 10 años de presidio, a trabajos forzados, que cumplirá en la penitenciaría de San Juan, y el pago de las costas.

Posteriormente presentó el defensor un pliego de excepciones para obtener del tribunal la correspondiente declaración. La primera parte del pliego contiene un análisis de las declaraciones de los testigos que declararon en el juicio y así deducir la carencia de prueba para condenar a su defendido, y la segunda, que es la importante, se refiere al hecho de habérsele entregado al jurado, a espaldas de la defensa, las deposiciones de los testigos que declararon en su sumario, muchas de las cuales se prestaron por personas que no comparecieron ante dicho jurado. En escrito separado se apeló de la negativa de un nuevo juicio y de la sentencia condenatoria.

Como no se hizo constar en ninguna forma, en el acta del juicio, lo que declararon los testigos, creyó el juez que no le era lícito certificar en un pliego de excepciones cuáles fueran las declaraciones de dichos testigos, y sobre el segundo extremo, reconociendo el juez de derecho como cierto el envío del sumario al jurado por conducto del alguacil del tribunal, sin intervención de la defensa, se dió como razón para justificar tal hecho lo siguiente: "la imposibilidad de enterarse el jurado de un procedimiento iniciado mucho antes de que comenzara a regir la Ley de Jurados en Puerto Rico y la no menor imposibilidad de separar los documentos que podía lleverse el jurado, con arreglo a la sección 83 de la ley de 31 de enero de 1901, de los que debían permanecer reservados en (*) el tribunal, porque esta selección equivalía a la mutilación de un sumario que, como conjunto de documentos públicos, no puede entresacarse por ningún juez debido a su espontánea voluntad."

Por estos fundamentos declaró el juez de derecho sin lugar las excepciones y de conformidad con el artículo 145 de la Ley

de Jurados, mandó archivar la resolución con el pliego presentado. Se admitió luego la apelación interpuesta contra la sentencia y se remitieron a esta superioridad las copias correspondientes y el antiguo sumario. Ya vencido el término del emplazamiento se personó en esta apelación el abogado Don José C. Ramos y en el estado de autos se le tuvo por parte, sin consignar el apelante el depósito sobre costas ni requerírsele para que jurase su insolvencia, como se solicitó cuando los autos estaban en poder del Fiscal. El apelante, por medio de su defensor, presentó escrito ante esta Corte Suprema, alegando que se habían cometido dos errores, siendo el uno el deseo manifestado por el juez de derecho de conocer los nombres de los jurados que en la primera deliberación votaron en pro y en contra del acusado y el otro la entrega del sumario en la forma que ya se ha reseñado y cuando de nuevo se había retirado el jurado a deliberar. Esos errores determinan en sentir de la defensa la necesidad de un nuevo juicio y a esta pretensión se adhiere el Fiscal.

Hemos creído conveniente traer todos esos antecedentes para juzgar con acierto las cuestiones sometidas hoy a nuestra consideración. No es del caso considerar hoy la primera parte del pliego de excepciones presentado ante el juez de derecho porque se refiere a si existe o nó prueba para condenar al acusado y hemos de limitarnos ahora a los defectos del procedimiento. Estudiando el primer error, hemos de reconocer desde luego que hubiera entrañado suma gravedad si se hubiera violado la reserva que debe guardarse en las deliberaciones (*) del jurado, porque el espíritu que en este punto domina en la ley que dió vida a la institución, es que esta operación se realice en completo alejamiento, porque el secreto en este caso es una garantía de la independencia y libertad del jurado, garantía e independencia que contribuyen también a que el veredicto deba ser el reflejo fiel de las conciencias honradas, independientes y libres. Pero afortunadamente no consta de las diligencias que se revelasen los nombres de los

jurados que en la primera deliberación emitieron su voto favorable y adverso, porque después de la pregunta hecha con tal propósito, vino la oposición del Fiscal y esto fué suficiente para que no se exteriorizase lo que debía quedar en el más absoluto silencio.

Pero viene a nuestra consideración el otro error cometido, alegado ante esta corte, y expuesto en el pliego de excepciones, a que nos hemos referido, o sea el de la entrega al jurado de un sumario sin el conocimiento de las partes, y por consiguiente, fuera de la audiencia pública. En ese sumario que hemos estudiado con toda atención, hay declaraciones escritas de testigos que no declararon ante el jurado y consta también la sentencia de 28 de diciembre de 1898, condenatoria de dos acusados y cuyo fallo contiene en el hecho probado la responsabilidad grave del hoy recurrente Simeón Reyes, que entonces estaba prófugo. Es de presumir que el jurado se enteró de todas esas constancias, y entonces surge en el ánimo la duda de si en el veredicto unánime de culpabilidad influyeron de modo poderoso esas nuevas e inesperadas impresiones, que decidieron sus conciencias en contra del acusado, que no tuvo tiempo ni ocasión de presentar sus descargos. Ese veredicto, en tales condiciones rendido, tiene que ser nulo, porque no puede considerársele como producto del análisis reflexivo y desapasionado de todos aquellos elementos de prueba que, (*) en corte abierta, se hubiesen aquilatado y que así se sometieran a la consideración del jurado.

Ese veredicto tiene que ser también nulo porque debe presumirse que entraña en su seno, como parte integrante de su génesis, los inconvenientes del antiguo procedimiento escrito, que tan abiertamente rechazan todas las modernas leyes de Enjuiciamiento Criminal. Así las cosas, se ha infringido la sección 83 de la Ley de Jurados de la Asamblea Legislativa, aprobada en 31 de enero de 1901, y el artículo 274 del Código de Enjuiciamiento Criminal, que sientan la misma doctrina,

o sea que al retirarse para deliberar el jurado puede llevar solamente documentos o escritos que hayan sido recibidos como pruebas en el proceso, o copias de los mismos, cuando no deba privarse de ellos a las personas en cuyo poder se hallen, pero en ningún caso podían llevarse, ni entregárseles, las declaraciones o deposiciones, como así se denominan en las Leyes del Jurado que anteriormente se han citado. No puede justificar la remisión del sumario el hecho de ser éste muy antiguo, porque fuéralo o nó, debía siempre tenerse en cuenta si había en él actuación perjudicial al acusado, que no sirvió de prueba en el juicio por jurado, pasando así por la crítica a que le sometieran la acusación y la defensa. En tal caso, cualquiera que fuese su tiempo, no podía bajo ningún concepto remitirse.

Tampoco cabe exculparse con el hecho de la imposibilidad de mutilar dicho sumario. El artículo 274, citado anteriormente, consiente que el jurado se lleve copias, pero siempre bajo la ineludible condición de que los originales se hayan presentado y analizado como prueba en el juicio por jurado y con el conocimiento de las partes. Se han infringido, por tanto, las disposiciones que de modo terminante prohiben la (*) entrega de los documentos que no se hallen en los casos que la ley autoriza, y como se remitió al jurado el sumario que contenía documentos y declaraciones de testigos que no se presentaron como pruebas en el juicio, el veredicto unánime de culpabilidad no puede prevalecer, porque debemos presumir que se ha engendrado con el examen de otras pruebas recibidas por el jurado fuera del tribunal. Para remediar tan grave mal están unánimes la sección 153, No. 2 de la Ley de Jurados de 31 de enero de 1901, y el artículo 303, No. 2, del Código de Enjuiciamiento Criminal. Por consiguiente, después de haber considerado el asunto con todo detenimiento y de pesar las consecuencias de un veredicto que entraña un vicio de nulidad tan manifiesto, somos de la opinión que debe

anularse la sentencia que se dictó por el juez de derecho y devolverse la causa para la celebración de un nuevo juicio.

*Resuelto de conformidad.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados Hernández, Sulzbacher y MacLeary.