EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FÉLIX RAMOS CRUZ, acusado y apelante.

*Número:* 17004   *Resuelto:* 5 de marzo de 1962

*Pablo R. Cancio*, abogado del apelante; *J. B. Fernández Badillo, Procurador General de Puerto Rico* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Presidente Señor Negrón Fernández como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El apelante estranguló a su concubina. Se le acusó de asesinato. El jurado lo declaró culpable y fue condenado a reclusión perpetua.

En apelación apunta como errores que conllevan la revocación de la sentencia (1) el haber admitido en evidencia una confesión que, como cuestión de derecho, fue obtenida involuntariamente; (2) el habérsele negado copia de las declaraciones juradas prestadas por unos testigos de cargo a cuyo testimonio el fiscal renunció y puso a la disposición de la defensa; (3) el haber entregado al jurado copia de la confesión que había sido admitida en evidencia contrario a lo dispuesto por el art. 274 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 783 y (4) el haber intruido al jurado sobre el asesinato en sus dos grados cuando sólo debió instruirlo sobre homicidio. Apunta otros dos errores que al discutirlos los expondremos.

Procede ahora relatar los hechos que culminaron en esta tragedia. El acusado y la víctima Matilde Colón vivían como marido y mujer en una barriada de Río Piedras. El día en que ocurrieron los hechos, un domingo por la tarde, Matilde encontró al acusado tratando de entrar a la casa de C........ L........ R........ con quien el acusado también mantenía relaciones íntimas. Por este motivo surgió una discusión entre el acusado y su concubina. Más tarde en la noche, cuando en la casa del acusado bebían y bailaban Ramón Rosa, la hermana de Matilde y una amiga, el acusado y la víctima, surgía a cada momento la cuestión del incidente

habido por la tarde cuando el acusado trató de entrar a la casa de su otra amante. Alrededor de las once de la noche terminó la reunión. La hermana de la víctima y la amiga dormían en la misma casa donde vivía el acusado, en una habitación contigua a la que ocurrieron los hechos. Antes de acostarse Matilde volvió a mencionar el incidente de por la tarde. El acusado le contestó que se callara que iban a salir "garateando". Al cabo de un rato se oye un grito de mujer seguido de un quejido. Luego la luz de la habitación donde duerme el acusado se enciende. Al instante la de la cocina. Entonces el acusado salió. Fue adonde su otra amante. La despierta y van a casa de una hermana del acusado de nombre Graciela. Allí manifiesta que había matado a Matilde. De allí va a casa de otra hermana en Puerta de Tierra y vuelve a manifestar que había matado a su mujer. Regresa a casa de Graciela. Antes de dirigirse a Puerta de Tierra el acusado ha llamado a su patrono, y le informa que avise a la policía, pues él está "metido en un lío". Cuando sale de llamar se encuentra con otra persona y le dice que ha matado a su mujer. La policía que ha sido avisada, va a la casa del acusado y encuentra a Matilde, tendida en la cama muerta. Murió por estrangulación. La policía va a casa de Graciela y el acusado se entrega. Es llevado al cuartel acompañado de su cuñado y de otro amigo. Al cuartel llegan alrededor de las tres y media de la mañana. El acusado pide protección pues teme que los parientes de la víctima puedan atacarlo. Es como las cinco de la mañana cuando el fiscal lo interroga, por espacio de tres cuartos de hora o una hora, según la propia declaración del acusado. El acusado en su declaración ante el jurado ratifica prácticamente todos los hechos que hemos relatado. Declara que manifestó a distintas personas que había matado a Matilde y que llamó a su patrono para que avisara a la policía porque se quería entregar.

1 Con estos hechos se apunta como error el que la confesión escrita que prestó el acusado fue obtenida mediante coacción sicológica. Para sostener su tesis señala la escasa inteligencia del acusado, que mientras el fiscal llegaba al cuartel, varios policías entraban armados al local donde estaba detenido y le hacían preguntas; que no le dieron de comer ni durmió durante el período que precedió a la confesión. Recuérdese que según el propio acusado él llegó al cuartel a las 3:30 de la mañana. No podía haber llegado antes pues la reunión en su casa terminó como a las once de la noche. Entonces se retiran la víctima y el acusado. Luego de haber transcurrido un rato es que se oye el grito que sale de la casa. Y aquí es que comienza la peregrinación que lo lleva al caserío López Sicardó, a Puerta de Tierra y vuelve al caserío y se entrega a la policía.

Va al cuartel acompañado y cuando llega el fiscal sólo está tres cuartos de hora con el acusado. Al fiscal sólo le reiteró lo que ya había comunicado a tantas personas. Y el día del juicio lo volvió a repetir en la silla de los testigos. Habiendo llegado al cuartel a las tres y media de la mañana, en el estado en que evidentemente estaba el acusado, era improbable que pudiera comer o dormir.

Nada hay en la prueba que en forma alguna justifique, aunque remotamente, una conclusión al efecto de que se coaccionó al acusado para que confesara. Por el contrario, la prueba revela que el acusado estaba ávido de comunicar lo que había hecho. Quizás como una forma de descargar su conciencia. El período de detención fue muy corto, y toda la prueba revela, repetimos, su deseo de confesar. El propio acusado hace las gestiones para entregarse a las autoridades. Ciertamente el hecho de que no le hubieran ofrecido comida a las cuatro o cinco de la mañana no puede tomarse en consideración como factor determinante de que se empleó coacción sicológica para obtener una confesión que el acusado repetía y admitía a prácticamente a todo el que se encontraba. Llegó

al cuartel según su propio testimonio a las 3:30 de la madrugada y aún suponiendo que el fiscal llegara alrededor de las siete como dice el acusado y no a las cinco, como declaró el fiscal, ese período no es tan largo como para invalidar una confesión que el acusado había hecho en por lo menos tres ocasiones anteriores a tres personas distintas. Para determinar si la confesión se obtuvo involuntariamente sólo es necesario referirnos a *Pueblo* v. *Meléndez*, 80 D.P.R. 787 (1958) y nos daremos cuenta de que todos los factores que se analizan para determinar que la confesión se obtuvo allí mediante coacción sicológica no están ni remotamente presentes aquí. ■

2 Tampoco constituye error las manifestaciones del juez que presidió la vista al efecto de que era inmaterial el que no se le hubiera dado alimento al acusado durante su detención en el cuartel. Obviamente así lo era dadas las circunstancias concurrentes.

3 Apunta como error el acusado el que al dársele lectura a la confesión del acusado se leyó lo siguiente, que aparecía en el referido documento:

"P. Dígame si es o no cierto que con anterioridad a estos hechos Ud. le había dado una golpiza a Matilde?

R. Sí señor.

P. Con anterioridad a estos hechos y a lo largo del tiempo que Ud. viene viviendo con Matilde, ¿cuántas veces Ud. la ha agolpeado a ella?

R. Una sola vez." ■

Para sostener su punto el acusado nos cita los casos de *Pueblo* v. *González*, 80 D.P.R. 208 (1958) y *Pueblo* v. *Archeval*, 74 D.P.R. 512 (1953). Pero estos casos lo que sostienen es que es improcedente introducir prueba de otros delitos anteriores. Las manifestaciones del acusado que el juez eliminó e instruyó al jurado que no considerara, se refieren a la comisión de un delito público. Pero de todos modos cuando el jurado recibió el documento de la confesión esa parte fue

tachada y no era legible. El juez declaró con lugar la objeción presentada por la defensa, y expresamente instruyó al jurado que no tuviera en consideración ese hecho.

4 El acusado nos plantea la cuestión de que tenía derecho a que el fiscal le entregara las copias de las declaraciones juradas prestadas por los testigos de cargo que el ministerio público no utilizó y que puso a la disposición de la defensa. Invoca a *Pueblo* v. *Ribas*, 83 D.P.R. 386 (1961). ■

El fiscal a través del juicio le entregó a la defensa copias de las declaraciones juradas prestadas por los testigos de cargo que depusieron ante el jurado. Pero la defensa interesaba las prestadas por los que no declararon; y en *Ribas* específicamente se hizo constar que el acusado tenía derecho a obtener copia de la declaración jurada luego de haber prestado testimonio el testigo de cargo.[1] La doctrina sentada en *Ribas* está basada en que el acusado debe tener todas las oportunidades para impugnar la veracidad de los testigos que declaran en su contra. Es por eso que no es hasta que el testigo ha declarado que surje el derecho a obtener la declaración jurada. Eso fue lo que decidimos en *Ribas* y lo que el Tribunal Supremo de los Estados Unidos decidió en *Jencks* v. *United States*, 353 U.S. 657 (1957), y lo que han sostenido otras jurisdicciones, *People* v. *Riser*, 305 P.2d 1 (Cal. 1956); *People* v. *Carella*, 12 Cal. Rptr. 446 (1961); *State* v. *Hunt*, 138 A.2d 1 (N. J. 1958) y *People* v. *Rosario*, 173 N.E.2d 881 (N.Y. 1961). En este caso, a pesar de que la defensa conferenció con los testigos que el fiscal renunció no los llamó a declarar. Claramente las circunstancias aquí prevalecientes, no le da al acusado el derecho a obtener las declaraciones juradas solicitadas. La situación es muy distinta a la que

---

[1] En la Regla 105 de las de Evidencia sometidas a la Asamblea Legislativa en el año 1961 se establecía como condición para la entrega que "el requerimiento se hará luego de terminado el examen directo del testigo".

el Tribunal Supremo de los Estados Unidos consideró en *Jencks* y nosotros en *Ribas*. ■

5. Pasemos a considerar el próximo error. Haber permitido que pasara al jurado el documento contentivo de la confesión del acusado contrario a lo dispuesto en el artículo 274 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 783.(²)

El juez de instancia al planteársele la cuestión por la defensa la declaró sin lugar por entender que una confesión no era una deposición. En apelación el Procurador General sostiene, que en California, de donde procede el precepto invocado por el apelante, se ha interpretado que el mismo no es mandatorio y que confiere discreción al juez para determinar qué documentos llevará el jurado al salón de deliberaciones.

Disposiciones parecidas a las nuestras existen en varias jurisdicciones estatales. California, 50 Cal. Code § 1137: Florida, 23 F.S.A. § 919.04; Idaho, 4 Idaho Code § 19-2203; Iowa, 57 Iowa Code Anno. § 784.1; Montana, 8 Revised Code of Montana, 94-7303; Nevada, 2 N.R.S. 175-390; North Dakota, 5 N.D. Cent. Code 29-2204; Nuevo Mexico, 4 N.M.S. 21-8-23 (1953 ed); Ohio, Pagés Ohio Revised Code, Ann. § 2945.35; Oregon, 1 O.R.S. § 17.320; Utah, 8 Utah Code Ann. § 77-32-2.

Como antes dijimos el art. 274 del Código de Enjuiciamiento Criminal proviene de California. En aquel estado se ha interpretado que lo que puede llevarse consigo el jurado en materia de documentos es discrecional de la corte. *People* v. *Williams*, 9 Cal. Rptr. 722 (1960); *People* v. *Walker*, 310

---

(²) Dispone así el referido precepto:

"Al retirarse para deliberar, el jurado podrá llevar consigo todos los documentos o escritos (exceptuando las deposiciones) que hayan sido recibidos como pruebas en el proceso, o copias de los archivos públicos o de los documentos privados que también se hayan presentado como prueba y de cuyos originales, a juicio del tribunal, no deben desprenderse las personas en cuyo poder se hallen. También podrán llevar las instrucciones escritas, si las hubiere."

P.2d 110 (Cal. 1957). Y convenimos que esa es la razonable interpretación del artículo en relación con todos los documentos que no sean deposiciones.(³) Pero en cuanto a las deposiciones, claramente establece una prohibición. *Pueblo* v. *Reyes*, 6 D.P.R. 196, 201 (1904). ▇

Se ha sostenido que una confesión es una deposición. *State* v. *Crighton*, 34 P.2d 511 (Mont. 1934); *State* v. *Lord*, 84 P.2d 80 (N.M. 1938) y *People* v. *Spranger*, 145 N.E. 706 (Ill. 1924). ▇

¿Cuál es la razón de esta prohibición? Se sostiene que es injusto para el acusado, que el jurado tenga ante sí un documento escrito que puede leer y releer cuantas veces le plazca en el cual el acusado admite la comisión del delito que se le imputa, mientras que de la prueba desfilada en el juicio en su defensa, el jurado sólo tiene el recuerdo de lo que declararon los testigos. Y normalmente tiene más fuerza el documento escrito que se tiene ante la vista, que el recuerdo de un testimonio oral. Así se ha interpretado en la mayoría de las jurisdicciones donde existe un precepto similar al nuestro. *Walker* v. *State*, 109 S.E.2d 748 (Ga. 1959); *Royals* v. *State*, 65 S.E.2d 158 (Ga. 1951); *Strickland* v. *State*, 145 S.E. 879 (Ga. 1928); *Basham* v. *State*, 340 P.2d 461 (Okl. 1959); *Bonicilli* v. *State*, 339 P.2d 1063 (Okl. 1959); *State* v. *Salomon*, 87 P.2d 807 (Utah 1939); Cf. *State* v. *Wilson*, 360 P.2d 1092 (Kan. 1961) y *People* v. *Spranger*, supra. Es lógico y razonable el fundamento para la existencia de la prohibición al efecto de que no vaya al jurado la confesión escrita del acusado. Debe ser práctica de nuestros tribunales el no permitir que vaya al jurado la confesión escrita del acusado, luego de ésta ser leída a los señores del jurado al ser presentada en evidencia por el fiscal. Así lo

---

(³) La Regla 140 de las de Procedimiento Criminal sometidas a la Asamblea Legislativa el 7 de febrero de 1962, elimina el concepto de discreción al disponer:

"Al retirarse a deliberar, el jurado deberá llevarse consigo todo objeto o escrito admitido en evidencia, excepto las deposiciones."

dispone expresamente el código vigente y como apuntamos en el escolio 3, una disposición similar aparece en las nuevas Reglas de Procedimiento Criminal propuestas por este Tribunal. Desde el año 1904 en *Pueblo* v. *Reyes*, supra, dijimos a la pág. 201 "pero en ningún caso podían llevarse, ni entregárseles las declaraciones o deposiciones, como así se denominan en las Leyes del Jurado que anteriormente se han citado". (Se refiere al art. 274 del Código de Enjuiciamiento Criminal.)

Ahora, considerados los hechos de este caso; ¿le fue perjudicial al acusado que pasara al jurado la confesión? Independientemente del hecho de que el juez de instancia debió haberle dado vigencia al precepto invocado por el acusado, el no hacerlo no tuvo el efecto de perjudicar al apelante, dadas las circunstancias especialísimas que rodean este caso. Entendemos que no lo perjudicó pues el jurado, si bien es verdad que tuvó ante sí la confesión escrita, en su recuerdo también tenía que estar vivo el testimonio de las distintas personas a quienes el acusado le admitió la comisión de los hechos. Y el propio acusado al declarar ratifica que así fue. Que a varias personas le comunicó lo ocurrido. Así en este caso, difícilmente la confesión escrita podía recordarle más al jurado, que los varios testimonios presentados en el juicio de personas a quienes el acusado confesó los hechos, y añádase a esto que en la confesión escrita el acusado manifiesta que la víctima le agredió con un cuchillo, incidente este beneficioso al acusado pues injertaba el elemento de lucha y de defensa propia. Así es que lejos de perjudicarle concebiblemente pudo haberle beneficiado el que los jurados tuvieran ante sí la confesión escrita, que de hecho corroboraba en parte el testimonio que prestó ante los jurados en su defensa. Es por concurrir estas circunstancias que no procede revocar la sentencia apelada, pues de ordinario, el permitir que vaya la confesión escrita al jurado, en violación de lo dispuesto en el artículo 274, conllevaría la revocación de la sentencia y la

concesión de un nuevo juicio. Así aplicaremos la regla en lo sucesivo.

6 El juez que presidió el proceso dio instrucciones al jurado sobre los delitos de asesinato en sus dos grados y sobre homicidio voluntario. El acusado apunta esto como error pues sostiene que de la propia prueba fiscal surge que a lo sumo el delito establecido fue uno de homicidio voluntario. ■

Tal cosa no surge de la prueba de cargo. De esta prueba no surge la súbita pendencia o el arrebato de cólera. El relato que antes hicimos lo demuestra. Es la prueba de defensa la que presenta los elementos que constituyen el delito de homicidio voluntario. Y por eso el juez instruyó al jurado sobre ese delito. Pero el jurado no le dio crédito y rindió un veredicto de asesinato en primer grado. La prueba de cargo, hemos visto, lo sostiene. Fue una muerte por estrangulación. *Pueblo* v. *Túa*, 84 D.P.R. 39 (1962); *Pueblo* v. *Febres*, 78 D.P.R. 893 (1956); *Pueblo* v. *Blanco*, 77 D.P.R. 767 (1954); *Pueblo* v. *Torres*, 75 D.P.R. 231 (1953); *Pueblo* v. *Méndez*, 74 D.P.R. 913 (1953). Hemos examinado las instrucciones y adecuadamente le informaron al jurado de los elementos constitutivos del delito de asesinato.

*No se cometió ninguno de los errores apuntados. Procede confirmar la sentencia apelada.*

