EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ RAMÓN DENIS RIVERA, acusado y apelante.

*Número:* CR-68-104      *Resuelto:* 2 de marzo de 1970

---

*William Fred Santiago,* abogado del apelante; *Rafael A. Rivera Cruz, Procurador General, J. F. Rodríguez Rivera, Subprocurador General,* y *Juan José Ríos Martínez, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Un jurado declaró culpable al apelante de un delito de Infracción al Art. 472 del Código Penal([1]) y fue sentenciado a cumplir de 2 a 5 años de presidio. La acusación le imputó que allá en o para el día primero de agosto de 1967 y en San Juan P.R., "ilegal, voluntaria, criminal y maliciosamente y mientras se encontraba legalmente casado con la señora Petra Carrillo Denis, falsa y fraudulentamente pretendió estar autorizado para vender una finca (casa), sin el consentimiento o aprobación de su esposa Petra Carrillo Denis, siendo este requisito indispensable para la validez de dicha venta por tratarse de una propiedad ganancial y bajo tal pretendida autorización voluntariamente la traspasó vendiendo la misma al Sr. Bienvenido López López por la cantidad de $5,000.00."

La prueba de cargo consistió en los testimonios de Bienvenido López, comprador de la propiedad, el Lcdo. Francisco Rádinson Pérez, notario ante quien se otorgó la escritura de compraventa, Petra Carrillo, esposa del acusado y Valois Cruz Riquerme, funcionario del Fondo del Seguro del Estado, quien entregó en un cheque el dinero al comprador para que a su vez éste lo entregara al acusado quien era el vendedor, como precio de la compraventa. Además se presentó prueba documental, entre ésta, una declaración jurada prestada por el acusado admitiendo la comisión del delito.

La defensa se limitó a presentar una copia de una escritura de compraventa de una casa ubicada en un solar propiedad de la Sucesión Merhoff otorgada en el 1960 ante el Notario Vicente Hita, Jr.

---

([1]) Dicho artículo dispone:

"Incurrirá en delito grave toda persona casada que falsa y fraudulentamente pretendiere estar autorizada para vender o hipotecar cualquiera finca, sin el consentimiento o aprobación del otro cónyuge, siendo este requisito indispensable para la validez de dicha venta o hipoteca, y bajo tal pretendida autorización, voluntariamente la traspasare o hipotecare." (33 L.P.R.A. sec. 1818.)

En síntesis, la prueba de cargo, no contradicha, tendió a establecer que para la fecha del juicio hacía unos 11 años que el acusado José Ramón Denis Rivera había contraído matrimonio con la señora Petra Carrillo en la ciudad de Nueva York. En 1960 el acusado vino a Puerto Rico y con dinero de ambos compró una casa sin solar sita en la calle Merhoff de Villa Palmeras en Santurce con el propósito de que la viviera su señora madre. (²) Más tarde el matrimonio se trasladó a Puerto Rico. En 1965 el acusado, estando casado con Petra Carrillo, compró a doña María Alberta Merhoff el solar donde enclava la casa que compró en 1960. (³)

El Sr. José Angel Romero, amigo del Lcdo. Rádinson le presentó a éste al acusado José Ramón Denis Rivera quien interesaba vender la propiedad sita en la calle Merhoff de Villa Palmeras. A preguntas del abogado el acusado le informó que él era casado con Petra Carrillo. Romero le llevó al Notario Rádinson los documentos necesarios para preparar la escritura de compraventa que sería firmada por las partes en las oficinas del Fondo del Seguro del Estado ya que el comprador Sr. Bienvenido López pagaría el precio de la venta con un cheque que le extendería el Fondo como indemnización por un accidente del trabajo. Después de redactada la escritura se trasladaron a las oficinas del Fondo, el Notario Rádinson, el comprador Sr. López, el acusado y una señora que éste presentó como su esposa Petra Carrillo. Esta señora firmó la escritura como Petra Carrillo pero luego resultó que no era la esposa del acusado sino una persona llamada María Juana o Juana María Quiñones Suárez. Al firmarse la escri-

---

(²) La compraventa se realizó mediante la escritura pública número 196 otorgada ante el Notario Vicente Hita, Jr., en 27 de abril de 1960. Copia de esta escritura fue la única prueba que presentó la defensa.

(³) Así consta en la escritura número 31 de 24 de junio de 1965 otorgada ante el Notario Rafael Baragaño Diez.

tura(⁴) un funcionario del Fondo entregó al comprador un cheque por $6,000 y éste lo endosó al vendedor, el aquí acusado.

Semanas más tarde el Lcdo. Rádinson le informó por teléfono al acusado que lo había engañado porque la señora que firmó la escritura no era su esposa Petra Carrillo. Así lo admitió el acusado y convino en firmar y firmó una declaración jurada aclarando ese hecho. Dicha declaración jurada, autorizada por el Notario Ignacio Santos Sierra, fue presentada y admitida en evidencia.

La verdadera esposa del acusado, doña Petra Carrillo, no compareció a firmar ni firmó la susodicha escritura de compraventa, ni autorizó la venta de la propiedad sita en la calle Mehrhof de Villa Palmeras.

El apelante señala la comisión de los siguientes cinco errores:

### PRIMER ERROR

"Incidió gravamente el Tribunal de Instancia, como cuestión de derecho, al admitir la declaración del Lic. Francisco Rádinson Pérez, no obstante la objeción del apelante, por entender éste que el Notario actuó en funciones de consejero legal en la transacción de compraventa.

### SEGUNDO ERROR

"Incidió gravemente el Tribunal de Instancia al admitir en evidencia la Declaración Jurada del apelante (confesión), preparada por el Lic. Francisco Rádinson Pérez y al permitir que tal confesión se entregara al Jurado y se permitiera a éste llevarla al Salón de Deliberaciones, mientras deliberaba sobre la culpabilidad o inocencia del acusado-apelante.

---

(⁴) Ésta es la escritura de compraventa número 76 otorgada ante el Notario Francisco Rádinson Pérez en San Juan, P.R., el día primero de agosto de 1967 por José Ramón Denis Rivera, el acusado y su esposa Petra Carrillo a favor de Bienvenido López López.

### TERCER ERROR

"Incidió gravemente el Tribunal sentenciador al permitir la declaración de la esposa del apelante, no obstante la objeción de éste.

### CUARTO ERROR

"Incidió el Tribunal Sentenciador al resolver que la propiedad vendida, constituía un bien perteneciente a la Sociedad Legal de Gananciales, compuesta por el apelante y la testigo de cargo Doña Petra Carrillo.

### QUINTO ERROR

"Erró el Juez a quo al concluir como cuestión de hecho que la propiedad vendida era un bien ganancial y transmitir instrucciones a base de esa conclusión."

■ El primer error no fue cometido. La objeción del acusado a que el abogado Francisco Rádinson Pérez declarara sin su consentimiento no encuentra base en la ley, en el récord ni en la jurisprudencia de este Tribunal. El testimonio prestado en corte por el Lcdo. Rádinson revela que éste se limitó a redactar la escritura de compraventa, a tomar las firmas de los contratantes y a autorizar dicha escritura como notario. Las advertencias legales las hizo en presencia de las partes y de un funcionario del Fondo del Seguro del Estado. No mediaron comunicaciones entre el referido abogado y el acusado que puedan caracterizarse como privilegiadas a tenor con las disposiciones de la Ley de Evidencia. (5) Se limitó a actuar como un mero instrumento para poner por escrito en una escritura pública lo que las partes dijeron haber convenido. No actuó por tanto, en contemplación

---

(5) El Art. 402(2) del Código de Enjuiciamiento Civil dispone:

"No se podrá examinar a una persona como testigo en los casos siguientes:

"1. .     .     .     .     .     .     .

"2. Un abogado no podrá, sin el consentimiento de su cliente, ser examinado con referencia a ninguna comunicación hecha por éste a aquél, ni al consejo que le hubiere dado respecto a la misma en el curso de su gestión profesional; ni podrá un secretario, taquígrafo o escribiente de

de la ley, como abogado. *Calderón* v. *Cacho*, 62 D.P.R. 620 (1943).

El abogado Rádinson actuó exclusivamente en su función de dar fe pública en un documento. El acusado no podía invocar la cuestión de comunicaciones privilegiadas para impedir la admisión en evidencia del testimonio de dicho abogado. *Lugo Ortiz* v. *Ferrer*, 85 D.P.R. 862, 871 y 872 (1962).

El tribunal sentenciador no cometió el segundo error señalado al admitir en evidencia la declaración jurada del acusado, ni fue en este caso error perjudicial que motive la revocación de la sentencia, el hecho de que se permitiera al jurado llevar consigo dicha declaración al salón de deliberaciones.

Ya conocemos las circunstancias en que el acusado prestó la declaración jurada ante el Notario Ignacio Santos Rivera. La prestó voluntariamente a requerimiento del abogado Sr. Rádinson. Dicha declaración es tan incriminatoria que prácticamente equivale a una confesión. [6]

---

abogado, ser examinado, sin consentimiento de su principal, con referencia a algún hecho cuyo conocimiento hubiere adquirido como tal empleado; mas este párrafo no será aplicable a una acción entre el abogado y su cliente, en la que se ventilare la existencia, cuantía, validez, y circunstancias de un convenio sobre pago de honorarios; pero ninguna comunicación será privilegiada bajo este párrafo, si se hubiere hecho con el propósito de transmitirse a cualquiera persona cuyo interés fuese contrario al del cliente, o con el fin de cooperar a un crimen o fraude que a la sazón estuviere en vías de perpetración o meditándose." (32 L.P.R.A. sec. 1734.)

[6] En lo pertinente dicha declaración lee:

"Que era el propietario, junto a mi esposa Petra Carrillo, de una casa que lleva el número de solar 101 del Bloque H localizada en la Barriada Merhoff en el barrio de Santurce de la ciudad de San Juan, Puerto Rico, la cual se encuentra inscrita al folio 163 del tomo 500 de Santurce Norte, finca número 18,276.

"Que allá para mediados del mes de julio del presente año, le expresé al Licenciado Francisco Rádinson Pérez el deseo de vender, junto a mi esposa Petra Carrillo al señor Bienvenido López López por el precio de $6,000.00, la propiedad antes mencionada.

"Que ese hecho se lo comuniqué al Licenciado Francisco Rádinson Pérez un día en que él fue a buscar a mi negocio una pieza de automóvil para su vehículo.

■ Esa declaración jurada no fue prestada por el acusado mientras se encontraba privado de su libertad, bajo arresto o en alguna forma bajo la custodia de la autoridad policíaca ni se le interrogaba para obtener manifestaciones incriminatorias con el propósito de enjuiciársele por la comisión de un delito. Era, por tanto, admisible en evidencia. *Pueblo* v. *Rosado Cancel*, 95 D.P.R. 557 (1967); *Pueblo* v.

---

"Que también le informé al Licenciado Francisco Rádinson Pérez, al entregarle las escrituras de la casa que se iba a vender, que toda vez que el dinero que tenía el señor Bienvenido López López para comprar la casa procedía de un cheque del Fondo del Seguro del Estado, la firma de la escritura debería ser en una de las oficinas del Fondo.

"Que el día primero de agosto de 1967, en el Fondo del Seguro del Estado, sitio acordado previamente para la firma de la escritura, le introduje al Licenciado Francisco Rádinson Pérez, como mi esposa Petra Carrillo a una tercera persona que no era mi legítima esposa Petra Carrillo.

"Que antes y después de la firma de la escritura de venta de la casa antes relacionada, la tercera persona, que allí comparecía como Petra Carrillo, y yo nos conducimos y nos comportamos como legítimos esposos.

"Que cuando el Licenciado Francisco Rádinson Pérez llamó a mi esposa Petra Carrillo para firmar la escritura frente al señor Valois, funcionario del Fondo del Seguro del Estado, esa tercera persona respondió, y voluntaria y tranquilamente firmó la escritura, estampando las iniciales P.C. en todos y cada uno de los folios del documento y su firma como Petra Carrillo al final del documento.

"Que ni antes ni después le informé al Licenciado Francisco Rádinson Pérez que esa tercera persona que allí comparecía como mi legítima esposa Petra Carrillo, no lo era.

"Que esa tercera persona, al ser inquirida por el Licenciado Francisco Rádinson Pérez como Petra Carrillo, respondió libre y voluntariamente.

"Que en ningún momento, antes ni después de la firma de la escritura antes mencionada, la tercera persona que le introduje al Licenciado Francisco Rádinson Pérez como Petra Carrillo, le informó a éste que no lo era.

"Que tanto la tercera persona como yo, antes y después de la firma del documento previamente mencionado, nos comportamos como legítimos esposos y así se lo comunicamos e hicimos creer al Licenciado Francisco Rádinson Pérez.

"Que le expedí un cheque al Licenciado Francisco Rádinson Pérez por la suma de $65.00 como pago de sus honorarios por la escritura número 76 otorgada el día 1 de agosto de 1967 donde yo le vendía la casa antes relacionada al señor Bienvenido López López.

"Que hace alrededor de dos años con nueve meses que estoy separado de mi esposa Petra Carrillo y tengo la intención decidida de divorciarme de ella." (Declaración Jurada, págs. 1 a 3.)

*Alfonso Oyola Sierra*, Sentencia de 14 de octubre de 1968; *Pueblo* v. *Beltrán Santiago*, 97 D.P.R. 92 (1969).

Hemos dicho en ocasiones anteriores que de ordinario, permitir que el jurado lleve consigo al salón de deliberaciones la confesión escrita de un acusado, constituye un error que conlleva la revocación de la sentencia y la concesión de un nuevo juicio. *Pueblo* v. *Ramos Cruz*, 84 D.P.R. 563 (1962); *Pueblo* v. *Cruz Jiménez*, 87 D.P.R. 133 (1963); *Pueblo* v. *Vega Román*, 92 D.P.R. 677 (1965). En los primeros dos casos nos negamos a revocar las sentencias porque consideramos que el error cometido no fue perjudicial al acusado. Por la comisión del mismo error revocamos la sentencia en el caso de *Pueblo* v. *Efraín Lebrón Morales*, Sentencia de 18 de octubre de 1968, porque consideramos que en ese caso el error fue perjudicial. La única prueba que conectaba al acusado con la comisión del delito consistió en el testimonio de dos cómplices y en la confesión extrajudicial del acusado y fue precisamente esta confesión la única prueba de corroboración. En *Pueblo* v. *Vega Román*, supra, además de cometerse el error que discutimos, se cometió otro más serio y perjudicial a la acusada consistente en que se injertó en el procedimiento algo ajeno al mismo en forma impropia, a saber, que la acusada había cometido hurtos con anterioridad. También revocamos la sentencia y ordenamos la celebración de un nuevo juicio.

En el caso de *Pueblo* v. *Cruz Jiménez*, supra, al negarnos a revocar la sentencia dijimos que los "acusados que confesaron no presentaron prueba de defensa y la prueba de cargo sobre los hechos fue sumamente sencilla y corta, sin que tuviera conflicto en sí misma."

En el presente caso la prueba tampoco fue extensa y complicada. La defensa no presentó prueba para contradecir la de cargo.

■ Además de la declaración escrita del acusado admitida en evidencia, el jurado tuvo ante sí prueba adicional

sobre el hecho fundamental contenido en la declaración jurada al efecto de que el acusado presentó como su esposa Petra Carrillo a otra persona que no lo era y que esta persona firmó la escritura con el nombre de Petra Carrillo. Así lo declaró el testigo Sr. Bienvenido López, el Lcdo. Rádinson, la señora Petra Carrillo y el Sr. Valois Cruz Riquerme. Estos testigos no fueron contradichos. Por lo tanto, el error cometido no perjudicó los derechos sustanciales del acusado.

Carece de mérito la contención del apelante de que, según se apunta en el cuarto error, incidió el tribunal sentenciador al resolver que la propiedad vendida constituía un bien ganancial.

Los bienes inmuebles están sujetos a las leyes del país en que están sitos. Art. 10 del Código Civil (31 L.P.R.A. sec. 10). Desde hace tiempo resolvimos que la transmisión de los bienes inmuebles sitos en Puerto Rico se rige por nuestras leyes. *Colón et al.* v. *Registrador*, 22 D.P.R. 369 (1915). Si bien el apelante y Petra Carrillo contrajeron matrimonio en la ciudad de Nueva York, donde no existe la Sociedad Legal de Gananciales, en cuanto a los bienes inmuebles adquiridos con posterioridad al matrimonio, rige el estatuto real. El apelante no presentó prueba para establecer que el origen del dinero con el cual adquirió la propiedad estando casado con Petra Carrillo era de naturaleza privativa, en cuyo caso la naturaleza de ese dinero se hubiera transmitido a la propiedad adquirida. *Babilonia* v. *Registrador*, 62 D.P.R. 688 (1943). Se reputan gananciales todos los bienes del matrimonio mientras no se pruebe que pertenecen privativamente al marido o a la mujer. Art. 1307 del Código Civil (31 L.P.R.A. sec. 3647); *De Arrastia* v. *Quiles*, 65 D.P.R. 912 (1946).

En este caso la aludida presunción quedó fortalecida por el testimonio de Petra Carrillo quien depuso que el dinero invertido en la compra de la propiedad pertenecía a ambos.

De todos modos el peso de la prueba para destruir la presunción de gananciales incumbe al que sustenta la naturaleza privativa de los bienes. *Espéndez* v. *Vda. de Espéndez*, 85 D.P.R. 437 (1962). En las escrituras de compraventa el apelante no hizo constar la procedencia del dinero con el cual se adquiriera la propiedad siendo la presunción de que es ganancial. *Bacó* v. *Registrador*, 63 D.P.R. 697 (1944). En el juicio, el apelante tampoco intentó destruir la presunción, según habíamos dicho antes. Conforme a nuestras leyes, el inmueble vendido por el apelante pertenecía a él y a su esposa Petra Carrillo por ser un bien ganancial. El no podía vender dicha propiedad sin el consentimiento de su esposa Petra Carrillo. Art. 1313 del Código Civil (31 L.P.R.A. sec. 3672). Si falsa y fraudulentamente el apelante pretendió estar autorizado para vender la propiedad inmueble ganancial, haciendo pasar a otra mujer como su esposa, sin el consentimiento o aprobación de ésta, incurrió en una violación del Art. 472 del Código Penal.

◾ Aunque no hay base en la prueba para dejar al jurado resolver si la propiedad vendida por el apelante era un bien ganancial o privativo suyo el juez instruyó ". . . en primer lugar tienen que determinar si esta propiedad, esta casa ubicada en la calle Merhoff #265 de Villa Palmeras era para el día 1ro. de agosto de '67 propiedad ganancial o sea, una propiedad perteneciente a la Sociedad Legal de Gananciales." Finalizó el Juez con la siguiente instrucción: ". . . Ustedes van a determinar si han quedado establecidos todos esos hechos a satisfacción de ustedes, o sea, que este acusado estando casado con Petra Carrillo, legalmente casado vendió ese día a que se refiere la acusación en una escritura pública ante el notario Francisco Rádinson una casa ubicada en la Calle Merhoff #265 de Villa Palmeras propiedad de la Sociedad Legal de Gananciales y que pretendió tener el consentimiento y la autorización de Petra Carrillo, su esposa, haciendo pasar a otra mujer como si fuera Petra Carrillo y

haciendo que ella firmara como si fuera su legítima esposa, . . . ."

El quinto error no fue cometido.

Finalmente consideraremos el tercer error que se relaciona con la admisión en evidencia del testimonio de la esposa del acusado, Petra Carrillo.

El Art. 402 del Código de Enjuiciamiento Civil (32 L.P.R.A. sec. 1734(1)) (⁷) dispone que un marido no podrá ser examinado a favor ni en contra de su mujer, sin el consentimiento de ésta; ni una mujer a favor ni en contra de su marido, sin el consentimiento de éste.

Como una excepción en lo que respecta a las acciones penales, dispone dicho artículo que la prohibición no será aplicable a una acción o procedimiento criminal por un delito cometido por uno de los cónyuges contra el otro. (⁸)

Arguye el apelante que la excepción no es aplicable a su caso porque el delito imputádole no fue cometido contra su esposa.

En el caso de *Pueblo* v. *Matos*, 83 D.P.R. 335 (1961), hicimos un estudio bastante abarcador del citado Art. 402 del Código de Enjuiciamiento Civil. En dicho caso una mujer declaró en contra de su esposo. El acusado había perpetrado un delito de violación técnica contra una menor de 14 años de edad y luego contrajo matrimonio con ella aunque no

---

(⁷) En su apartado 1, dicho Art. dispone:

"1. Un marido no podrá ser examinado a favor ni en contra de su mujer, sin el consentimiento de ésta; ni una mujer a favor ni en contra de su marido, sin el consentimiento de éste; ni podrá ninguno de los dos durante o después del matrimonio, ser examinado sin consentimiento del otro, respecto a alguna comunicación habida de parte a parte, durante el matrimonio, pero esta disposición no será aplicable a una acción o procedimiento civil por uno de los cónyuges contra el otro ni a una acción o procedimiento criminal por un delito grave cometido por uno de ellos contra el otro." (32 L.P.R.A. sec. 1734.)

(⁸) La excepción se aplica lo mismo a las causas criminales por delitos graves que a las causas por delitos menos graves. *Pueblo* v. *Correa*, 34 D.P.R. 884 (1926).

vivieron juntos, para evitar que declarara en el proceso por violación. Resolvimos que bajo tales circunstancias era de aplicación la excepción a la prohibición y por tanto admisible en evidencia el testimonio de la esposa del acusado.

En aquel caso señalamos, al trazar el origen y desarrollo de la doctrina que prohíbe a la mujer declarar contra su esposo y a éste declarar en contra de su esposa, que la razón que con más frecuencia se expone para sostener la regla es que con ella se preserva el matrimonio.

Razones de peso nos mueven a resolver que en este caso la admisión en evidencia del testimonio de la esposa del acusado apelante no justifican la revocación de la sentencia apelada. Aunque puede argüirse que técnicamente el delito cometido por el acusado es un delito cometido contra el Estado y no contra su esposa, la realidad indiscutible es que el fraude cometido por dicho acusado iba dirigido a lesionar los derechos de aquélla, resultando ser ella la verdadera víctima del delito. [9]

Por otro lado, la razón de la regla que establece la prohibición deja de tener aquí contenido real porque la conservación del matrimonio entre el acusado y su esposa es ilusorio en vista de que (1) para la fecha del juicio hacía más de dos años que estaban separados, (2) el acusado vivía en concubinato con otra mujer, y (3) el propio acusado manifestó en una declaración jurada, su firme propósito de divorciarse.

Finalmente debemos señalar que en el supuesto de que se hubiera cometido el error, el mismo no fue perjudicial al acusado. El testimonio de su esposa fue más bien de carácter acumulativo. Los hechos esenciales constitutivos del delito

---

[9] Véase Wharton, *Criminal Evidence,* (12 ed.) sec. 829; *United States* v. *Mitchell* (C.A.2d) 137 F.2d 1006, *cert. den.* 321 U.S. 794, 88 L.Ed. 1083; *reh. den.* 322 U.S. 768, 88 L.Ed. 1594; *People* v. *Lantz,* 120 Cal. App.2d 787; *Jordan* v. *State,* 142 Ind. 422, 41 N.E. 817; *United States* v. *Ryno,* 130 F.Supp. 685; *Gilles* v. *Del Guercio,* 150 F.Supp. 864, 97 L.Ed. 613.

quedaron probados con prueba independiente no contradicha. El carácter ganancial de la propiedad vendida por el acusado, el fraude cometido por éste al presentar a otra mujer como su esposa haciendo que dicha mujer firmara la escritura de compraventa como si en realidad fuera su cónyuge, y aun la falta de consentimiento y aprobación de la transacción por la esposa, quedó sustanciada por prueba independiente. En cuanto a este último ingrediente del delito imputado al apelante, el Lcdo. Rádinson declaró que al decirle al acusado que tratara de conseguirle el dinero a su esposa para que el asunto no pasara a fiscalía, le contestó que: ". . . la que se iba a fastidiar era la esposa . . . ." Además le dijo que el Lcdo. Rádinson era una víctima y que él (el acusado) lo había engañado "por tratar de fastidiar a la esposa . . . ." El conjunto de la prueba de cargo incluyendo la confesión del acusado y excluyendo el testimonio de su esposa, establece cumplidamente la falta de consentimiento o autorización de Petra Carrillo a la venta hecha por su esposo. De suerte que no es probable que el testimonio de la esposa del acusado tuviera alguna influencia de importancia en la decisión del jurado.

*Por las razones expuestas se confirmará la sentencia apelada.*

El Señor Juez Presidente no intervino. El Juez Asociado Señor Dávila emitió una opinión disidente en la cual concurren los Jueces Asociados Señores Hernández Matos y Santana Becerra.

—O—

Opinión disidente emitida por el Juez Asociado Señor Dávila

San Juan, Puerto Rico, a 2 de marzo de 1970

Disiento porque en *Pueblo* v. *Cruz Jiménez,* 87 D.P.R. 133 (1963) inequívocamente expresamos que "[d]ebe entenderse, repetimos, después de la decisión de Ramos Cruz [*Pueblo* v. *Ramos Cruz,* 84 D.P.R. 563 (1962)] que los

jueces de instancia no deben cometer el error [de permitir que la confesión escrita vaya al cuarto de deliberaciones del jurado] bajo el criterio de que el mismo pudiera resultar no perjudicial al acusado. La prohibición del artículo 274 [igual disposición vigente hay en la Regla 140 de las de Procedimiento Criminal de 1963] es clara y la misma debe ser cumplida por las salas sentenciadoras."

En el presente caso el juicio se celebró el 12 de enero de 1968, cinco años después de nuestra expresión en *Cruz Jiménez*, y seis después que en *Ramos Cruz* dijimos que "Así aplicaríamos la regla en lo sucesivo."

Se hace hincapié en la opinión del Tribunal que nos negamos a revocar en *Ramos Cruz* y *Cruz Jiménez*. Pero en *Ramos Cruz* existían circunstancias extraordinarias. Además de ser el primer caso en que se nos planteaba la cuestión las circunstancias presentes admitían hacer una excepción. Así nos expresamos:

". . . Debe ser práctica de nuestros tribunales el no permitir que vaya al jurado la confesión escrita del acusado, luego de ésta ser leída a los señores del jurado al ser presentada en evidencia por el fiscal. Así lo dispone expresamente el código vigente y como apuntamos en el escolio 3, una disposición similar aparece en las nuevas Reglas de Procedimiento Criminal propuestas por este Tribunal. Desde el año 1904 en *Pueblo* v. *Reyes*, supra, dijimos a la pág. 201 'pero en ningún caso podían llevarse, ni entregárseles las declaraciones o deposiciones, como así se denominan en las Leyes del Jurado que anteriormente se han citado'. (Se refiere al art. 274 del Código de Enjuiciamiento Criminal.)

Ahora, considerados los hechos de este caso; ¿le fue perjudicial al acusado que pasara al jurado la confesión? Independientemente del hecho de que el juez de instancia debió haberle dado vigencia al precepto invocado por el acusado, el no hacerlo no tuvo el efecto de perjudicar al apelante, dadas las circunstancias especialísimas que rodean este caso. Entendemos que no lo perjudicó pues el jurado, si bien es verdad que tuvo ante sí la confesión escrita, en su recuerdo también tenía que estar vivo

el testimonio de las distintas personas a quienes el acusado le admitió la comisión de los hechos. Y el propio acusado al declarar ratifica que así fue. Que a varias personas le comunicó lo ocurrido. Así, en este caso, difícilmente la confesión escrita podía recordarle más al jurado, que los varios testimonios presentados en el juicio de personas a quienes el acusado confesó los hechos, y añádase a esto que en la confesión escrita el acusado manifiesta que la víctima le agredió con un cuchillo, incidente este beneficioso al acusado pues injertaba el elemento de lucha y de defensa propia. Así es que lejos de perjudicarle concebiblemente pudo haberle beneficiado el que los jurados tuvieran ante sí la confesión escrita, que de hecho corroboraba en parte el testimonio que prestó ante los jurados en su defensa. Es por concurrir estas circunstancias que no procede revocar la sentencia apelada, pues de ordinario, el permitir que vaya la confesión escrita al jurado, en violación de lo dispuesto en el artículo 274, conllevaría la revocación de la sentencia y la concesión de un nuevo juicio. Así aplicaremos la regla en lo sucesivo."

En *Cruz Jiménez* el juicio se vio antes de nuestra opinión en *Ramos Cruz*, y ya hemos visto lo que expresamos en este caso en relación con la forma como aplicaríamos el precepto en el futuro. De hecho le estábamos dando efecto prospectivo a nuestro dictamen, o sea, que aplicaríamos rígidamente la prohibición de que la confesión vaya al jurado, a los juicios que se celebraran después de la fecha en que emitimos el dictamen de *Cruz Jiménez*, 25 de enero de 1963.

Así, en *Pueblo* v. *Santos López*, 87 D.P.R. 624 (1963), aunque el juicio se celebró antes de *Ramos Cruz* y *Cruz Jiménez*, no obstante revocamos por el efecto acumulativo de tres errores cometidos por el tribunal de instancia. En *Pueblo* v. *Couret Martínez*, 89 D.P.R. 57 (1963), apuntamos que el juicio se había celebrado antes de emitir nuestra opinión en *Ramos Cruz*. En *Pueblo* v. *Hernández Rodríguez*, 89 D.P.R. 770 (1964), el juicio se celebró en junio de 1960; en *Pueblo* v. *Martínez Rivera*, 90 D.P.R. 163 (1964), el juicio se ventiló en abril de 1960 y así lo consignamos al resolver la cuestión; en *Pueblo* v. *Castro Cruz*, 90 D.P.R. 206 (1964),

también consignamos que el juicio se celebró antes de *Ramos Cruz* y que se trataba de una declaración jurada presentada por la propia defensa para impugnar un testigo de cargo; en *Pueblo* v. *Martínez Díaz*, 90 D.P.R. 467 (1964), el juicio se celebró antes de *Cruz Jiménez*; en *Pueblo* v. *Vega Román*, 92 D.P.R. 677 (1965), el juicio se celebró luego de *Cruz Jiménez* y revocamos; en *Pueblo* v. *Cortés Muñiz*, 93 D.P.R. 781 (1966), el juicio se celebró antes de *Cruz Jiménez*; en *Pueblo* v. *Colón Rivera*, 93 D.P.R. 852 (1967), único caso que hemos confirmado habiéndose celebrado el juicio después de *Cruz Jiménez*, durante abril y mayo de 1964, aclaramos que no se trataba estrictamente de una confesión. Se trataba de una carta escrita por la acusada.

Con expresiones tan claras como las de *Ramos Cruz* y *Cruz Jiménez* no vemos qué justificación pueda aducirse para que no se cumplan con las mismas por los jueces de instancia. Claramente expresamos en *Cruz Jiménez* que los jueces de instancia no debían cometer el error de permitir que la confesión escrita fuera al jurado bajo el criterio de que el mismo pudiera resultar no perjudicial al acusado. Ciertamente el primero llamado a darle vigencia a sus pronunciamientos es el propio Tribunal Supremo.