EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAMÓN ROSADO CANCEL, acusado y apelante.

*Números:* CR-65-472,     *Resueltos:* 12 de diciembre de 1967
CR-65-473,
CR-65-474.

*Enrique Miranda Merced, Edna Abruña Rodríguez* y *E. Armstrong de Watlington,* abogados del apelante; *J. B. Fernández*

*Badillo, Procurador General, y Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante, Ramón Rosado Cancel, fue convicto de asesinato en primer grado y de dos infracciones a la Ley de Armas por lo que fue condenado a una pena de reclusión perpetua y a otra de un año de cárcel en cada una de las infracciones al Art. 6 y al Art. 4 de la Ley de Armas.

El fiscal acusó al apelante de asesinato en primer grado al dar muerte a Suárez Machuca, ilegal, voluntaria y maliciosamente, con premeditación, deliberación y propósito decidido y firme, y mientras perpetraba y llevaba a cabo en dicha ocasión un delito de robo.

La prueba demostró, en síntesis, que cuatro días antes del crimen el apelante dijo que el occiso "era un sinvergüenza que lo choteaba cuando sacaba ron." José Marcano Nieves testificó que "el [apelante] con anticipación [a las 6 de la tarde del día del crimen] en 30 de enero de 1963, él nos había dicho que tenía ganas de darle un cantazo a él, a don Benito [el occiso]"; que el apelante le ofreció al testigo $200 por matar a don Benito. Miguel Ángel Báez testificó que en la referida tarde fue que el apelante les dijo que "tenía ganas de darle un cantazo o de matarlo [a don Benito]."

Durante el día 30 de enero de 1967, el apelante envió a Marcano, joven que trabajaba con él en su siembra de tabaco, a comprar un par de gallos a casa del occiso y a decirle "que si no iba a buscarlos por el día los iba a buscar por la noche." Como a las seis de la tarde fue el apelante a buscar los gallos acompañado de Marcano y de Báez quienes vieron cuando el apelante acometió con su machete a Suárez Machuca al éste bajarse para sacar un gallo de una jaula; "le dio el machetazo", según testificó Marcano. Báez testificó que vio al apelante tirarle varios machetazos al occiso y que después "Le sacó el dinero y nosotros nos fuimos a correr"; dijo Marcano que al día siguiente, cuando el apelante le dio

$31 por su trabajo y le pidió se callase, añadió "que lo había matado y que ahora estaba bien, que lo había matado como él quería" ya que "el [apelante] le había robado los chavos." El apelante, además, le hurtó un revólver que tenía el occiso. A Báez, el apelante le dio $20 "para que yo no dijera nada"; este testigo declaró que no había notificado el caso a la policía porque "yo no me atrevía, porque él [el apelante] decía que si lo decíamos nos mataba." Báez también testificó que el apelante le dijo "que él había guardado el revólver de don Benito en su finca debajo de unos troncos de palma." Allí lo encontró un detective que acompañaba a este testigo en la búsqueda del arma en cuestión.

Apunta el apelante que el tribunal de instancia incidió:

(1) al instruir al jurado, sin base en la prueba, sobre un posible veredicto de culpable de asesinato en primer grado si entendían que la muerte había ocurrido al perpetrarse un delito de robo.

El representante legal del apelante no hizo objeción alguna a esta instrucción durante el juicio. La instrucción objetada, luego de haber leído el juez la acusación que imputaba al apelante haber matado a un ser humano mientras perpetraba y llevaba a cabo un delito de robo en la persona de éste, fue la siguiente:

"En este caso el Fiscal le imputa un delito de Asesinato en Primer Grado a este acusado alegando que la muerte de Benito Suárez Machuca ocurrió al perpetrarse un delito de Robo y también alega el Fiscal que el delito es de Asesinato en Primer Grado porque en la muerto [sic] de don Benito Suárez Machuca medió deliberación por parte del acusado.

Como el Fiscal alega que la muerte de don Benito Suárez Machuca constituye Asesinato en Primer Grado, porque ocurrió al perpetrarse un delito de Robo, es necesario que les diga yo a ustedes lo que se entiende por robo.

.    .    .    .    .    .    .    .

. . . si los Distinguidos Caballeros del Jurado creen, por el resultado de la prueba practicada, consideran fuera de duda

razonable que el acusado en la fecha y lugar a que se refiere la acusación, ilegal y voluntariamente, con malicia premeditada y propósito firme y deliberado de quitarle la vida ilegalmente, dio muerte a Benito Suárez Machuca haciendo uso de un machete, entonces él el [*sic*] culpable de un delito de Asesinato en Primer Grado.

Si los Distinguidos Caballeros del Jurado consideran por el resultado de la prueba practicada y fuera de duda razonable que el acusado Ramón Rosado Cancel dio muerte a Benito Suárez Machuca, pero que en la muerte de dicho Benito Suárez Machuca no medió deliberación por parte del acusado ni la misma se produjo en la ocasión de perpetrarse un delito de Robo, pero existió en la misma malicia premeditada de parte del acusado, entonces es vuestro deber declarar al acusado culpable del delito de Asesinato en Segundo Grado."

Arguye que el fiscal no sostuvo que el apelante hubiese decidido robarle al occiso y mientras perpetraba ese robo le ocasionara la muerte; que toda la prueba de cargo iba encaminada a probar que el propósito del apelante era matar a la víctima y el alegado robo fue incidental a la muerte y no que ésta fue incidental al robo.

La instrucción copiada de que se queja el apelante define correctamente el delito de asesinato en primer grado. Es cuanto el tribunal de instancia procede a instruir al jurado sobre asesinato en segundo grado que hace referencia a si la muerte se produjo en ocasión de perpetrarse un delito de robo. No tan sólo no se objetó esta instrucción sino que no le pudo ser perjudicial al apelante.

(2) al permitir pasar prueba de manifestaciones del apelante equivalentes a una confesión, sin que previamente se resolviese su admisibilidad en ausencia del jurado.

El testimonio de los testigos Marcano y Báez sobre las admisiones que les hizo el apelante de haber matado a Benito Suárez Machuca y de haberle robado dinero y un revólver no fueron objetadas oportunamente ni del récord surge duda, conflicto o controversia alguna sobre la volun-

tariedad de las mismas. El tribunal de instancia no tuvo ante sí ninguna cuestión de voluntariedad sobre estas admisiones. No hubo razón ni ocasión para invocar la aplicación de lo dispuesto en la Regla 151.1 de las de Procedimiento Criminal, pues más bien que sobre confesiones, los testimonios en cuestión trataban sobre declaraciones espontáneas del apelante a personas particulares sobre determinados aspectos de lo ocurrido. Constituían eslabones de prueba que conducían a la culpabilidad del apelante, como dijimos en *Pueblo* v. *Crespo Guerrero*, 90 D.P.R. 217 (1964). Precisamente por su carácter de espontáneas bajo tales circunstancias, y en ausencia de controversia sobre su voluntariedad, no aplica ni lo dispuesto en la referida Regla ni la doctrina que establecimos en *Rivera Escuté* v. *Jefe Penitenciaría*, 92 D.P.R. 765 (1965). Como en *Pueblo* v. *Laguna Rodríguez*, 92 D.P.R. 831 (1965), en el caso que nos ocupa se trataba de "manifestaciones incriminatorias del apelante . . . [que] no fueron hechas mientras se encontraba bajo custodia policiaca y mucho menos al interrogársele con el fin de obtener manifestaciones incriminatorias."

(3) al admitir tres fotografías y permitir que el jurado se las llevase al salón de deliberaciones.

■ Señala la representación del apelante que el tribunal de instancia admitió en evidencia tres fotografías mostrando el cuerpo del occiso; que la fotografía que es el Exhibit 1 es igual a la marcada Exhibit 3 por lo que "no añade nada excepto dramatismo a lo ilustrado en el Exhibit 3"; que como el cadáver aparece en una posición distinta en la fotografía marcada Exhibit 2, "no podía ser otro el propósito de esta fotografía que el apelar a las emociones del jurado."

Durante el juicio se objetó la admisión de dichas fotografías porque lo que representan fue cubierto por el testimonio de Julio Carrillo Figueroa quien declaró que él fue la persona que encontró el cadáver de Benito Suárez Machuca, así como por el testimonio del médico con respecto a

la herida y posición del cadáver. El fiscal en efecto arguyó que se presentaban para demostrar la posición del cadáver y de los bolsillos cuando el cuerpo del occiso se encontró.

El apuntamiento carece de sustancialidad. Como indica el Procurador "el leve perjuicio que ello hubiera podido causarle al acusado quedó desvanecido por el abrumador peso de la prueba de cargo." *Pueblo* v. *Rivera Romero*, 83 D.P.R. 471–482 (1961).

■ (4) al declarar al apelante culpable de una infracción al Art. 4 y de una infracción al Art. 6 de la Ley de Armas.

En apoyo de este apuntamiento arguye el apelante que la acusación no imputaba que el acusado ilegal, voluntaria y maliciosamente portaba, conducía y transportaba un machete; que la prueba tendió a demostrar únicamente que el apelante había usado el machete contra otra persona lo que es una modalidad distinta del delito, la cual no fue imputada. No se cometió este error.

La acusación alegó, con claridad, que el apelante portaba, conducía y transportaba un machete, ilegal, voluntaria y maliciosamente "en ocasión de usarlo no como instrumento propio de un arte, deporte, profesión, ocupación u oficio, con el cual le ocasionó la muerte a Benito Suárez Machuca."

La prueba sostuvo ampliamente esta alegación. De la misma se podía inferir que el apelante y los testigos Marcano y Báez fueron a buscar los gallos a casa del occiso portando sus machetes y que el apelante acometió al occiso con este tipo de arma.

■ (5) al declarar culpable al acusado de una violación al Art. 6 de la Ley de Armas a base de la declaración de un testigo que aparece como cómplice sin que dicha declaración fuese corroborada en cuanto al delito.

La prueba no demostró que Báez fuese un cómplice del apelante. El acompañó al apelante a buscar los gallos, no

a matar a Benito Suárez Machuca y no tuvo participación alguna ni en llevar a cabo el propósito del apelante, ni en el acto de éste ocasionarle la muerte a Suárez Machuca. En cuanto a posesión ilegal del revólver, lo único que la prueba demuestra es que Báez tuvo conocimiento que el apelante guardó el revólver que le tomó del cuerpo del occiso "en la finca de él entremedio de cinco tocones de palma . . . más arriba del pozo"; que un detective y el testigo buscaron el arma y aquél lo encontró en el tronco de una palma. No hubo prueba alguna que justificase concluir que Báez estuviese sujeto a ser encausado por uno o más de los delitos imputados al apelante. *Pueblo* v. *Morales Morales*, 93 D.P.R. 369 (1966) ; *Pueblo* v. *Rodríguez Hernández*, 91 D.P.R. 183 (1964).

*En vista de lo expuesto, se confirmarán las sentencias dictadas en estos casos por el Tribunal Superior, Sala de Bayamón, en 13 de febrero de 1964.*