EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* HÉCTOR MORALES SILVA, acusado y apelante.

*Número:* CR-68-224      *Resuelto:* 16 de diciembre de 1970

Gilberto Gierbolini, Procurador General, y Ruth Tentori de Lebrón Velázquez, Procuradora General Auxiliar, abogados de El Pueblo; Benjamín Ortiz, abogado del apelante.

Benjamín Ortiz, abogado del apelante.

PER CURIAM: Convicto de los delitos de homicidio involuntario (33 L.P.R.A. sec. 635(2)), y de conducir en estado de embriaguez (9 L.P.R.A. sec. 1041), impugna el apelante las sentencias dictadas en este caso que lo condenaron a cumplir las penas de un año de cárcel más la suspensión de su licencia de conductor por un término de dos años a partir de la fecha en que concluya su período de reclusión, y de tres meses de cárcel más la suspensión de la licencia de conducir por un año, debiéndose cumplirse concurrentemente.

De entrada es necesario señalar que la defensa no objetó las instrucciones del juez sentenciador. Al preguntársele si tenía alguna que ofrecer contestó que no.

A.—Apunta el apelante que el tribunal de instancia incidió

1.—Al no dar instrucción sobre emergencia súbita.

■ La prueba demuestra claramente que el apelante mientras conducía un vehículo de motor por la avenida Baldorioty de Castro a unas 40 millas por hora, en estado de embriaguez, se desvió hacia una isleta que divide los carriles de tránsito en direcciones opuestas y allí arrolló a dos niñas. El auto, luego de tropezar y doblar un rótulo de tránsito, se volcó en la trocha contigua de dirección contraria con la desgracia que cayó sobre una de dichas niñas ocasionándole la muerte.

El apelante testificó que al llegar a la calle Aponte le salió al paso una muchacha y él frenó y tiró el guía hacia el lado izquierdo, hacia la verja, y ahí perdió el control y se viró para arriba "con los pies para arriba, quedando el vehículo así en la otra avenida"; que dicha avenida estaba un poco obscura, no tenía mucha visibilidad. En contrainterrogatorio admitió que cerca del sitio habían unos 12 focos de luces de mercurio. Aunque dijo que avanzaba por el carril izquierdo de la avenida Baldorioty de Castro en dirección al aeropuerto, admitió que cerca de allí, en la calle Tapia, tenía que doblar a la derecha para subir para dirigirse a la avenida Puerto Rico.

El testimonio del apelante de que una muchacha "le salió al paso" está en pugna con la realidad que es que al ocurrir el accidente las niñas ya habían cruzado los carriles de tránsito de la avenida Baldorioty de Castro en dirección de San Juan al aeropuerto, por donde dice el apelante que él se dirigía, y se encontraban en la grama de la isleta moviéndose hacia un caminito que de allí las llevaba a cruzar los carriles del aeropuerto a San Juan.

Por lo tanto, la prueba no justificaba instrucción alguna sobre emergencia súbita ocasionada porque una de las niñas "le salió al paso."

2.—Al no instruir al jurado que el ministerio público tenía que probar más allá de duda razonable que la intoxicación o embriaguez del acusado fue la causa del accidente.

En apoyo de este apuntamiento el apelante sólo nos ofrece dos citas de la obra American Jurisprudence. El ministerio público no lo discute.

■ Tal instrucción no era necesaria pues el juez incluyó en sus extensas instrucciones la definición del delito, el hecho que la falta de circunspección en el manejo de un vehículo de motor constituye negligencia y término que también definió, y que si los jurados entendían que hubo negligencia de parte del apelante y que ésta fue la causa próxima del accidente que trajo como consecuencia la muerte de la víctima, era el deber del jurado si quedan satisfechos que se ha establecido eso más allá de toda duda razonable, producir un veredicto de culpabilidad.

3.—Al no dar instrucciones sobre el concepto de causa próxima.

Ni el apelante ni el Procurador General discuten este apuntamiento. Nuestra lectura del récord nos convence que en efecto, aunque sin definir lo que es causa próxima, las instrucciones señalan las pautas necesarias sobre esta cuestión al discutir la posible negligencia de una o más de las niñas.

4.—Al instruir al jurado que el acusado tenía que establecer y tenía el peso de la prueba para probar que la negligencia de la víctima fue la única causa del accidente.

■ La instrucción en cuestión no fue dada en esos términos. Por el contrario, el tribunal de instancia instruyó correctamente en relación con la negligencia de la víctima, que aunque la prueba debe demostrar la existencia de negligencia contributoria como la causa próxima del accidente, "[E]sto no quiere decir, damas y caballeros del Jurado, en forma alguna que cuando el acusado alega la defensa de que

el accidente se debió a la negligencia de la víctima o de una tercera persona y no logra establecer esa defensa a satisfacción de ustedes, tienen ustedes, entonces, la obligación de condenar al acusado, porque, entonces, se estaría exigiéndole al acusado que estableciera su inocencia más allá de toda duda razonable, cuando es al fiscal en representación del Pueblo de Puerto Rico en este caso, como en cualquier otra causa criminal al que corresponde establecer la culpabilidad del acusado más allá de toda duda razonable."

5.—En sus instrucciones sobre velocidad.

■ Luego de indicar el juez sentenciador al jurado que la velocidad máxima en el lugar del accidente era de 25 millas, pues no había anuncio alguno permitiendo una mayor, les informó que la velocidad razonable a que se debe conducir un vehículo puede variar de acuerdo con las circunstancias, dando como ejemplo la visibilidad y la cantidad de tránsito de vehículos o de peatones, o sea "que todo depende de las circunstancias específicas que concurran en el momento y sitio del accidente."

El juez no dio instrucciones específicas sobre reducir la velocidad al acercarse a una intersección sino que leyó al jurado las disposiciones sobre velocidad de la Ley de Vehículos y Tránsito (9 L.P.R.A. sec. 841) en la que se provee la reducción de la velocidad al acercarse a una intersección, cruce ferroviario, curva, y bajo otras circunstancias específicas.

6.—Sobre el grado de negligencia requerida.

■ Arguye el apelante que "en el homicidio involuntario debe también establecerse la negligencia crasa." No tiene razón. La definición estatutaria del delito no lo exige. Ya hemos resuelto que si la prueba demuestra que la muerte ocurrió debido al negligente manejar de un vehículo de motor se ha cometido el delito de homicidio involuntario. *Pueblo* v. *Olmo*, 89 D.P.R. 82, 85 (1963).

■ B.—Nos señala el apelante, además, que el tribunal de instancia incidió al permitir prueba de manifestaciones del apelante ante unos policías y otras personas en presencia de la policía.

Este apuntamiento se basa en el testimonio del testigo ocular Orestes Calzada al efecto de que cuando llegó al lugar de los hechos oyó al apelante decir que "era él que conducía ese auto"; que dijo esto en el momento que preguntaba dónde se encontraba un teléfono público, a lo que el testigo le contestó que no sabía pero que podía usar el de su casa. En ese momento el policía más cercano era el policía Rivas quien se encontraba "al otro lado del tramo de la avenida." El apelante entonces se dirigió a donde se encontraba dicho policía y le informó que iba a casa de Orestes Calzada a usar su teléfono. Tanto Rivas como Calzada lo acompañaron en esa gestión.

La anterior prueba era claramente admisible pues aun el caso no había llegado a una etapa crítica de la investigación ni estaba el apelante bajo custodia de la policía y en ese momento no se consideraba como sospechoso de manera que no era aplicable la norma que establecimos en *Rivera Escuté* v. *Jefe de la Penitenciaría*, 92 D.P.R. 765 (1965) y *Pueblo* v. *Guadalupe Rosa*, 94 D.P.R. 190 (1967). Más bien se trata de declaraciones espontáneas del apelante proferidas al público en general y que el testigo Calzada oyó. *Pueblo* v. *Rosado Cancel*, 95 D.P.R. 557, 561, 563 (1967).

De acuerdo con la anterior norma también era admisible la declaración del apelante al público y que el policía Rivas oyó mientras éste trataba de localizar a las partes envueltas en el accidente para entrevistarlas, al efecto de que "se le metieron dos muchachas al medio y perdí el control." Entonces dicho policía le preguntó su nombre, si era dueño del carro y si había impactado a la víctima a lo que contestó el apelante que sí. *Pueblo* v. *Denis Rivera*, 98 D.P.R. 704 (1970); *Pueblo* v. *Beltrán Santiago*, 97 D.P.R. 92, 93 (1969);

*Pueblo* v. *Negrón Vélez*, 96 D.P.R. 419, 436 (1968); *Pueblo* v. *González Torres*, 95 D.P.R. 155 (1967); *Pueblo* v. *Laguna Rodríguez*, 92 D.P.R. 831 (1965).

De todos modos, el apelante testificó que al llegar a la intersección de la calle Aponte "Me salió al paso una muchacha . . . Bajaban de la Eduardo Conde para abajo . . . . Me cruzó una primero y cuando me cruzó una primero yo metí los frenos e inmediatamente el guía para el lado para donde no darme y ahí perdí el control y me viré para arriba con los pies para arriba, el carro . . . . El carro brincó a la otra avenida."

C.—Arguye el apelante, por último, que el tribunal de instancia incidió al permitir prueba sobre el estado de embriaguez del acusado a base de una tabla de por ciento y al no instruir que la presunción que podría surgir de ese por ciento constituía una presunción rebatible por el acusado.

Luego de leer al jurado la disposición de la Ley de Vehículos y Tránsito que declara ilegal el conducir un vehículo de motor bajo el estado de embriaguez (9 L.P.R.A. sec. 1041(a)), el tribunal de instancia instruyó al jurado que:

"Eso no quiere decir, señores del jurado, que una persona por el solo hecho de que haya ingerido bebidas alcohólicas, no esté en condiciones y no pueda manejar un vehículo de motor, ni tampoco quiere decir que sea ilegal el manejo de un vehículo de motor bajo los efectos de bebidas embriagantes, tenga que estar el conductor en estado de completa embriaguez alcohólica. Lo que contempla la ley es que una persona que ha ingerido bebidas alcohólicas a tal punto que el efecto de esas bebidas alcohólicas en su organismo interfiere en tal forma en su organismo para impedir que el conductor ejerza un completo control del vehículo, un dominio del vehículo, de manera que le permita garantizar la seguridad de vidas y propiedades mientras maneja dicho vehículo. No es que haya ingerido algún licor ni tampoco es que esté completamente borracho. Ustedes son los llamados a determinar por la prueba practicada en este caso, si el acusado había ingerido tal cantidad de licor, cualquiera que ella fuese, según ustedes juzguen, que ha quedado probado a satisfacción

de ustedes y más allá de toda duda razonable, que por las circunstancias que concurrieron en el accidente, la forma en que se produjo el mismo, ustedes entiendan que el hecho de haber ingerido bebidas alcohólicas había colocado al acusado en tal situación, en tal estado que ese alcohol en su organismo interfería con su capacidad para controlar real y efectivamente los movimientos del vehículo y evitar un accidente, bien sea reduciendo la velocidad o parando el vehículo o desviando el vehículo para evitar causarle daño a otras personas, o sea, que es algo de todo punto de vista circunstancial, dependiendo de las circunstancias específicas de cada caso y de la apreciación que hagan ustedes de toda la prueba practicada en el caso."

■  No se dio instrucción alguna en relación con la presunción provista por la sec. 5-801 de la Ley de Vehículos y Tránsito (9 L.P.R.A. sec. 1041(b)(3)) de que una persona estaba bajo los efectos de bebidas embriagantes si en el momento del análisis había en su sangre 15 centésimas de uno por ciento o más por peso de alcohol. No se le informó al jurado de esta presunción y por consiguiente de que era rebatible.

Hubo prueba pericial de que la muestra de sangre del apelante arrojó un .16% de alcohol que equivale a ocho vasitos de una onza de ron o whiskey u ocho cervezas; que en esas condiciones una persona "está bajo la influencia de alcohol . . . ha disminuido . . . sus facultades normales para reaccionar a situaciones de emergencia y su habilidades norma. [sic] . . . Y hay pérdida de las inhibiciones . . . hay descenso en el tiempo de reaccionar . . . afecta la vista . . . los oídos, produce cierta incordinación muscular." El policía Rivas testificó que el apelante se mostraba nervioso, inquieto, se tambaleaba y por la boca le salía olor a licor.

El propio apelante, no tan sólo trató de rebatir la anterior prueba de su embriaguez, sino que, por el contrario, testificó que después de las cinco de la tarde del día de los hechos se quedó en su casa y "me di unos traguitos" saliendo

de ella como a las ocho de la noche. El accidente ocurrió a las ocho y media de esa misma noche.

En vista de lo expuesto el no haber dado la instrucción en cuestión tendió a favorecer al apelante. Además, el apelante no solicitó del tribunal de instancia que diera instrucción alguna sobre este particular ni formuló objeción a las que dio.

En vista de lo anterior, *se confirmarán las sentencias dictadas en este caso por el Tribunal Superior, Sala de San Juan, en 6 de mayo de 1968.*

El Señor Juez Presidente y el Juez Asociado Señor Santana Becerra no intervinieron. El Juez Asociado Señor Pérez Pimentel concurre en el resultado.

—O—

San Juan, Puerto Rico, 26 de marzo de 1971

EN MOCIÓN DE RECONSIDERACIÓN

PER CURIAM: Solicita la reconsideración el apelante fundándose en que en la opinión *Per Curiam* que confirmó la sentencia que lo condenó por homicidio involuntario se expresó, contrario a lo resuelto por este Tribunal, que como "el testimonio del apelante de que una muchacha 'le salió al paso' está en pugna con la realidad que es que al ocurrir el accidente las niñas ya habían cruzado los carriles de tránsito de la avenida Baldorioty de Castro en dirección de San Juan al aeropuerto, por donde dice el apelante que él se dirigía, y se encontraban en la grama de la isleta moviéndose hacia un caminito que de allí las llevaba a cruzar los carriles del aeropuerto a San Juan . . . [p]or lo tanto, la prueba no justificaba instrucción alguna sobre emergencia súbita ocasionada porque una de las niñas 'le salió al paso.' "

Tiene razón el apelante en que lo antes expresado es contrario a la doctrina sentada por este Tribunal al efecto de que "Basta que haya un ápice de prueba que justifique

una defensa para que el Tribunal dé instrucciones al jurado sobre esa defensa, para que el jurado resuelva sobre si darle o no credibilidad a esa prueba." (Moción de Reconsideración del apelante.)

■ Examinadas las instrucciones del mismo, encontramos que el apelante no solicitó instrucción alguna sobre emergencia súbita y además que el juez expresamente instruyó al jurado en la siguiente forma:

". . . La prueba tiende a demostrar que la víctima caminaba acompañada por tres amigas y repito, la teoría de la defensa es que el accidente no se debió a negligencia alguna del acusado, sino que fue.a consecuencia única y exclusivamente de la negligencia de la víctima y/o de sus acompañantes. No hay duda alguna que en un caso de esta naturaleza si se estableciera que el accidente no fue causado por la negligencia del acusado, sino causado por la negligencia de la víctima y/o sus acompañantes, entonces, el acusado no incurriría en responsabilidad criminal. . . ." (T.E. pág. 390).

.    .    .    .    .    .    .    .    .

De manera, Damas y Caballeros del Jurado, que en este caso, como les dije hace un momento, se ha alegado por el acusado, la defensa que el accidente se debió únicamente a la negligencia de la víctima y/o de sus acompañantes. Es indudable que en situaciones de esta naturaleza no solo debemos atender a la negligencia de la persona que conduce el vehículo, sino también a la negligencia de la persona que resultó perjudicada o de cualquier otra persona. En primer lugar es la negligencia directa la negligencia de la persona que realiza el acto ilegal, en el segundo caso, se trata de la negligencia contribuyente, decir, la negligencia de la persona que también fue poco previsora y cuidadosa de su propia persona para protegerse de cualquier acto negligente o la negligencia de cualquier otra persona ajena al acusado, y ajena a la víctima, que fuese la causa próxima del accidente que produjo la muerte, pero esta negligencia contributoria o contribuyente de la víctima o de cualquier otra persona es necesario que quede demostrada por la prueba. Es indudable que esa prueba, digo, ese tipo de negligencia pueda ser alegado por la defensa y existiría un eximente de responsabilidad, pero para que sea un eximente total de responsabilidad criminal por

parte del acusado debe quedar establecido como les dije hace un momento, que esa negligencia contribuyente tiene que haber sido la única y verdadera causa del accidente que produjera la muerte, esto no quiere decir, damas y caballeros del jurado, en forma alguna que cuando el acusado alega la defensa de que el accidente se debió a la negligencia de la víctima o de una tercera persona y no logra establecer esa defensa a satisfacción de ustedes, tienen ustedes, entonces, la obligación de condenar al acusado, porque, entonces, se estaría exigiéndole al acusado que estableciera su inocencia más allá de toda duda razonable, cuando es al fiscal en representación del Pueblo de Puerto Rico en este caso, como en cualquier otra causa criminal al que corresponde establecer la culpabilidad del acusado más allá de toda duda razonable. . . ." (T.E. págs. 392–3)

*Se declarará sin lugar la moción de reconsideración.*