Bracons, Recurrente, v. El Registrador de San Juan,
Sección Primera, Recurrido.

Recurso gubernativo contra nota del Registrador de la Propiedad de San Juan, Sección 1ª., en cuanto deniega la inscripción de dos terceras partes de un inmueble.

No. 292.—Resuelto en febrero 1, 1917.

Estatuto Real—Estatuto Personal—Reforma del Antiguo Código Civil—Lex Rei Citae.—La reforma más importante hecha por la Asamblea Legislativa de Puerto Rico en 1902 al título preliminar del Código Civil antiguo, fué la relativa a la restricción de la doctrina de los estatutos personal y real, tomando en cuenta y aplicando el principio general del derecho civil americano de que los derechos respecto de los bienes inmuebles han de regularse totalmente, así en cuanto a la contratación como en cuanto a los derechos hereditarios, por la ley del país en que están sitos.

Id.—Sucesión de un Súbdito Español, Catalán, con Respecto a Bienes Inmuebles Situados en Puerto Rico.—Con arreglo al principio que informa el Código Civil revisado vigente en Puerto Rico, la sucesión de un súbdito español, catalán, con respecto a bienes inmuebles situados en esta isla, debe regirse por la ley portorriqueña y no por la legislación catalana.

Tratado de París—Derechos Reconocidos a los Súbditos Españoles—Regulación del Ejercicio de esos Derechos por la Legislatura de Puerto Rico.—La reforma del Código Civil de Puerto Rico en el sentido indicado, no es contraria al Artículo IX del Tratado de París que garantizó a los súbditos españoles residentes en la isla entre otros derechos el de permanecer en ella o marcharse, conservando en uno y otro caso todos sus derechos de propiedad, con inclusión del de vender o disponer de tal propiedad o de sus productos, con sujeción a las leyes aplicables a los demás extranjeros.

Los hechos están expresados en la opinión.
Abogado de la recurrente: *Sr. S. Abella Bastón.*
El registrador recurrido, Sr. José S. Belaval, compareció en nombre propio.
El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

En el registro de la propiedad de San Juan, Sección Primera, se encuentra inscrita a favor de Salvador Baví Durall la casa No. 12 de la calle de la Tanca de esta ciudad de San Juan. El señor Baví Durall murió en Barcelona, España, el 20 de septiembre de 1915 y su viuda, la recurrente Rosa Bracons y Vidal, solicitó que el dominio de la indicada casa

se inscribiera a su favor por ser ella la heredera universal
de su marido.

A tal efecto la señora Bracons presentó en el registro
el testamento otorgado por su esposo en Barcelona el 18 de
julio de 1907, bajo el cual murió; la partida de defunción
del mismo; la partida de defunción de Salvador Baví y Bra-
cons, fallecido en Barcelona el 2 de marzo de 1915, y una
consulta evacuada por el abogado del Ilustre Colegio de Bar-
celona Victorino Bisbal, relativa a los derechos de la señora
Bracons.

Del testamento aparece que el dicho señor Baví y Durall
declaró que era catalán y, por tanto, que la sucesión de sus
bienes debía regularse por la legislación catalana; que legaba
a su hijo Salvador Baví Bracons y a los demás que pudiera
tener en el momento de su muerte, la cantidad que en con-
cepto de legítima les correspondiera, y que de todos sus res-
tantes bienes, muebles e inmuebles, derechos y acciones pre-
sentes y futuros, tanto de los radicados en España como de
los que poseyera en Puerto Rico, o en cualquier otro punto,
nombraba su heredera universal a su esposa Rosa Bracons
y Vidal la cual podría disponer de dicha herencia a sus libres
voluntades. Y la consulta, después de una exposición de
los hechos y del derecho aplicable en vigor en Cataluña, Es-
paña, contiene las siguientes conclusiones:

"A. Que la herencia de D. Salvador Baví y Durall, ha de regu-
larse por la legislación foral de Cataluña. B. Que el testamento
por dicho señor otorgado ante notario público y dos testigos llama-
dos y rogados, es perfectamente válido. C. Que el hijo del testa-
dor, habiéndole premuerto sin dejar sucesión, no pudo transmitir
derecho alguno. D. Que si el hijo hubiese poseído bienes, sería here-
dera ab-intestato suya universal, su madre Doña Rosa Bracons. E.
Que esta señora, sin intervención alguna, como heredera puede dis-
poner libremente de los bienes de su esposo, y F. Que el derecho de la
interesada merece el amparo de la legislación de cualquier país en que
radiquen inmuebles de la herencia, haciéndose las inscripciones pro-
cedentes en los Registros de la Propiedad."

El registrador verificó la inscripción solicitada sólo en cuanto a la tercera parte de la casa en cuestión y la negó en cuanto a las dos terceras partes restantes por los siguientes fundamentos:

"1. Que el causante legó a su hijo Don Salvador Baví Bracons y a los demás que tuviera la cantidad que en concepto de legítima le correspondiera sobre sus bienes, cuyo legado de legítima, por la muerte del legatario antes que la del testador, quedó sin efecto. 2. Que tratándose de testamento otorgado por un extranjero en su país, en el que se trasmiten bienes inmuebles radicados en esta isla, es de aplicación el artículo 10 del Código Civil vigente; y debe regularse la cuantía de los derechos sucesorios de la heredera Doña Rosa Bracons y Vidal con arreglo a las prescripciones de este código: determinada conforme al mismo la legítima correspondiente al hijo premuerto como ascendente a las dos terceras partes de la herencia, resta sólo para la heredera instituída la tercera parte de la finca, que es la de libre disposición, según dicho texto;"

Y contra esa calificación del registrador, se interpuso el presente recurso gubernativo en el que tanto la recurrente como el recurrido han presentado amplios alegatos sosteniendo sus respectivas opiniones.

Todo se reduce en este caso a la decisión de una cuestión fundamental, a saber: cuál es la ley reguladora, la de Cataluña, o la de Puerto Rico.

Si es la de Cataluña, entonces tiene razón la recurrente, pues como dice el distinguido abogado barcelonés Sr. Bisbal:

"Por el derecho civil español, puede uno morir en parte testado y en parte intestado, rigiendo entonces para un legado no aceptado o no podido aceptar, las reglas del ab-intestato, pero en el Principado de Cataluña, en esta materia, está vigente el derecho romano, que informaba Las Partidas en las Leyes III y 33, Tit. IX, Partida 6, sujetándose el derecho de acrecer a la regla siguiente: Hace aumentar a los herederos y legatarios la porción que dejó vacante el coheredero y el colegatario que no llega a la herencia o legado—Digesto, Tit. II, Lib. VII, y Código Justiniano, De caducis tollendis, Tit. LI, Lib. VI.

"Y, como quiera que 'por la institución de heredero se difiere la totalidad de la herencia al heredero o herederos nombrados, aunque

se les haya dejado solamente una parte o cosa cierta de la misma
(Instit. par. 5 de hered. ins. tit. 14, lib. 2 Ls. 7 y 62, D. de div. reg.
jur. tit. 17, lib. 50, L. 1, par. 4, D. de hered. inst. tit. 5, lib. 28), de
ahí que D. Salvador Baví al instituir heredera a su esposa de toda
la herencia menos la parte legítima correspondiente al hijo, por no
haber llegado éste a tomar su parte, debe entenderse que la totali-
dad de la herencia ha pasado a ser de la esposa del testador, madre
del hijo que no llegó a tener derecho a parte indivisa de los bienes.''

Mas, si es la legislación vigente en Puerto Rico la que
debe aplicarse, entonces tendremos que estar conformes con
el registrador, pues en verdad con el solo testamento y las
partidas de defunción indicadas, no podía dicho funcionario
inscribir la trasmisión completa del dominio de la casa de
que se trata a favor de la recurrente. Es un caso para ser
decidido previamente por las cortes. Puede que la decisión
de éstas reconozca los derechos de la señora Bracons a la
totalidad de la herencia. Pudiera resultar que existieran
otros herederos.

No hace mucho tiempo esta Corte Suprema, por medio de
su Juez Asociado señor Hutchison, emitió una opinión en el
caso de *Colón et al. v. El Registrador de Aguadilla,* 22 D. P. R.
369, que decide, a nuestro juicio, la cuestión envuelta en el
sentido de ser la ley de Puerto Rico la que debe aplicarse.

El artículo 10 del Código Civil antiguo, de origen espa-
ñol, leía como sigue:

"Art. 10.—Los bienes muebles están sujetos a la ley de la nación
del propietario; los bienes inmuebles, a las leyes del país en que están
sitos.

"Sin embargo, las sucesiones legítimas y las testamentarias, así
respecto al orden de suceder como a la cuantía de los derechos suce-
sorios y a la validez intrínseca de sus disposiciones, se regularán por
la ley nacional de la persona de cuya sucesión se trate, cualesquiera
que sean la naturaleza de los bienes y el país en que se encuentren.

"Los vizcaínos, aunque residan en las villas, seguirán sometidos,
en cuanto a los bienes que posean en la tierra llana, a la ley 15, tit.
20, del *Fuero de Vizcaya.*"

Y el mismo artículo, tal como quedó reformado por la

Asamblea Legislativa de Puerto Rico desde el año de 1902, se limita a consignar:

"Los bienes muebles están sujetos a la ley de la nación del propietario; los bienes inmuebles, a las leyes del país en que están sitos."

La razón del cambio se expresa así por la Comisión Codificadora que preparó el proyecto del Código Civil Revisado, sometido a la Asamblea:

"La reforma más importante hecha al Título Preliminar del Código ha sido la relativa a restringir la doctrina de los estatutos personal y real, tomando en cuenta y aplicando el principio general del derecho civil americano de que los derechos respecto de los bienes inmuebles han de regularse totalmente, así en cuanto a la contratación como en cuanto a los derechos hereditarios, por la ley del país en que están sitos."

Basándose en tales antecedentes y después de citar otras disposiciones legales aplicables al caso concreto que allí se discutía, y de invocar la opinión de tratadistas distinguidos y las decisiones de esta misma Corte Suprema en los casos de *Cruz* v. *Domínguez,* 8 D. P. R. 580, y *Amadeo* v. *El Registrador,* 3 D. P. R. 141 (2ª. ed.), esta corte trazó su línea de conducta con toda claridad, optando por aplicar en Puerto Rico íntegramente la teoría americana, esto es, que la *lex rei sitae* es la norma que debe seguirse al determinar la capacidad legal de las partes en transacciones sobre bienes inmuebles. Véase el caso de Colón, *supra.*

Pero se sostiene por la parte recurrente que la Legislatura de Puerto Rico no tenía facultades para variar la ley en cuanto pudiera referirse a extranjeros españoles, por tener éstos garantidos sus derechos en el párrafo primero del Artículo IX del Tratado de París, que, copiado a la letra, dice como sigue:

"Los súbditos españoles, naturales de la Península, residentes en el territorio cuya soberanía España renuncia o cede por el presente tratado, podrán permanecer en dicho territorio o marcharse de él,

conservando en uno u otro caso todos sus derechos de propiedad, con inclusión del derecho de vender o disponer de tal propiedad o de sus productos; y además tendrán el derecho de ejercer su industria, comercio o profesión, sujetándose a este respecto a las leyes que sean aplicables a los demás extranjeros. En el caso de que permanezcan en el territorio, podrán conservar su nacionalidad española, haciendo ante una oficina de registro, dentro de un año después del cambio de ratificaciones de ese tratado, una declaración de su propósito de conservar dicha nacionalidad: a falta de esta declaración, se considerará que han renunciado dicha nacionalidad y adoptado la del territorio en el cual pueden residir.''

Dejando a un lado la cuestión de si la recurrente tiene derecho a invocar ese artículo sin haber alegado que el señor Baví Durall residía en Puerto Rico cuando se efectuó el cambio de soberanía, procederemos a fijar el alcance del tratado en el particular de que se ha hecho mérito.

El Departamento de la Guerra de los Estados Unidos interpretó el artículo, y su interpretación fué publicada en Puerto Rico para conocimiento y gobierno de los interesados, incluyéndola en la Orden General No. 47, de 6 de marzo de 1909. Héla aquí:

''El Artículo IX garantiza a los súbditos españoles el derecho de conservar su nacionalidad española y seguir viviendo en dicho territorio; mantener sus derechos de propiedad y el de ejercer sus industrias, oficios o profesiones, debiendo ejercerse estos derechos con sujeción a las leyes del país que se apliquen a los demás extranjeros.''

El tratado en este respecto aplicó al caso de Puerto Rico la bien establecida regla de derecho internacional de que ''la división de un imperio o la anexión de territorio no afecta a los derechos adquiridos de propiedad, y por lo tanto un ciudadano de un país que posee tierras en la parte del país que se ha separado de la madre patria, retiene su derecho a enajenar la tierra y trasmitirla a sus herederos aunque éstos sean también extranjeros en el nuevo país,'' 1 R. C. L. 809; 31 L. R. A. 181, nota; *Airhart* v. *Massieu,* 98 U. S. 491.

Ahora bien, ¿el reconocimiento a los españoles de todos sus derechos de propiedad, con inclusión del de vender o disponer de sus bienes y de sus productos, implica que la Legislatura de Puerto Rico, creada por el Congreso de los Estados Unidos no pueda dictar leyes regulando el ejercicio de los derechos reconocidos?

En manera alguna, a nuestro juicio. Los españoles no adquirieron un privilegio extraordinario en este sentido. La actuación de ambos gobiernos fué la justa y procedente en tales casos. España sabía que dejaba en Puerto Rico miles de súbditos dueños de cuantiosos bienes y obtuvo que se les garantizara expresamente el pleno ejercicio de sus derechos de propiedad, pero no podía obtener ni obtuvo que ese ejercicio continuara regulándose por ella y no por la nueva soberanía.

Regular el ejercicio de un derecho, no es desconocer su existencia. Al contrario. De ahí que aplicar a los súbditos españoles que poseen bienes inmuebles en Puerto Rico la regla que se aplica a los franceses e ingleses que se encuentren en tal caso y a los mismos puertorriqueños y americanos, no sea violar la garantía solemne del tratado. Aquello que la legislatura del país consideró bueno para los naturales de la isla, debe considerarse bueno también para los extranjeros. Debemos presumir que las Asambleas legislan para fomentar el bien y el progreso de los pueblos que las eligen o en los cuales funcionan.

Por virtud de todo lo expuesto, opinamos que debe confirmarse la nota recurrida.

*Confirmada la nota recurrida.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.