Opinión disidente emitida por la
Jueza Asociada Señora Fiol Matta,
a la cual se unen el Juez Presidente Señor Hernández Denton y la Juez Asociada Señora Rodríguez Rodríguez.
En este caso se presentan dos controversias. Una es sencilla y la otra muy compleja. En cuanto a la primera, estoy conforme con la Opinión mayoritaria: el Tribunal de Apelaciones resolvió correctamente que procedía un descu-brimiento de prueba amplio y liberal sobre toda evidencia pertinente para identificar los bienes que forman parte del caudal hereditario, así como la presentación en el juicio de la prueba descubierta que fuera admisible.(1)
En cuanto a la segunda, aunque comparto las preocupa-ciones que señala la Opinión mayoritaria, no estoy de acuerdo con la solución que propone para conciliar nuestra regla sobre conflicto de leyes con nuestra doctrina suceso-ral ni con la conclusión de que los tribunales de Puerto Rico no tienen jurisdicción para atender interrogante al-guna relacionada con bienes ubicados en otros países que forman parte de la herencia que se está distribuyendo en Puerto Rico.
Entiendo que la Opinión mayoritaria concluye incorrec-tamente que Puerto Rico está privado de jurisdicción para atender controversias sobre inmuebles localizados fuera de la Isla, conclusión cuya consecuencia es que las personas llamadas a la herencia se vean obligadas a llevar a cabo unos trámites legales demasiado extensos y onerosos. Con-trario a lo que enuncia la opinión mayoritaria, los tribuna-les de Puerto Rico tienen jurisdicción para, dentro de un solo pleito de partición, determinar los derechos sobre in- *335 muebles ubicados en otros países y estados, aplicándole a esos bienes las leyes extranjeras pertinentes.
I
En 1902, nuestro ordenamiento jurídico de diseño civi-lista sufrió diversas enmiendas que respondieron al cam-bio de autoridad política en Puerto Rico. Como parte de esa reforma, a nuestro Código Civil se incorporaron principios del common law sin armonizarlos con las doctrinas legales vigentes en el país.(2) El resultado de ese proceso inade-cuado son las múltiples contradicciones que permanecen en nuestra legislación y se manifiestan cuando los hechos de un caso exigen una resolución que, para estar acorde con una regla, requieren que se relegue otra igualmente aplicable. Este Tribunal se ha visto en la obligación de bus-car una salida a esas incongruencias legislativas en diver-sas ocasiones.(3) Hoy se enfrenta al choque de nuestra doc-trina de sucesiones —proveniente de España— con nuestra normativa sobre conflicto de leyes procedente de Estados Unidos.
Debemos comenzar por reconocer que no existe una so-lución perfecta para lograr la compatibilidad de nuestra visión sobre la herencia como una masa universal que se rige por una sola ley y nuestra regla de aplicarle a los bienes inmuebles las leyes del país en donde están ubica-dos, independientemente de si esos inmuebles pertenecen a una masa hereditaria que se está dividiendo en otro Estado. Todas las opciones para conciliar estas dos normas suponen discordancias teóricas e inconvenientes prácticos.
*336 Confrontamos una realidad fundamental: las concepcio-nes sobre la ordenación de la propiedad y la familia vigen-tes en cada país moldean sus leyes sucesorales. En el de-recho internacional privado, los sistemas de ordenamiento sucesorio nacionales se catalogan en dos tipos principales: los de corte romano y los de corte germánico. El sistema romano, utilizado en la mayor parte de los ordenamientos civilistas, concibe el caudal hereditario como una unidad que debe ser regida por una sola ley. Esto debido a que se entiende que las normas sucesorales regulan las relaciones de personas y que la ordenación de los bienes que ellas poseen es accesoria. Por el contrario, el sistema germánico ve la herencia como una manera de atribuir bienes y se guía por normas relacionadas con la propiedad. Entonces, aplica a cada bien inmueble del patrimonio la ley del lugar en que esté ubicado, sin importar que con ello se creen muchas masas hereditarias independientes.(4)
El catedrático español de derecho internacional Miaja de la Muela señala que someter el caudal hereditario a una sola ley representa ventajas indudables: en el aspecto teó-rico, porque se rige de manera uniforme el patrimonio y la relación familiar; en el aspecto práctico, porque el fraccio-namiento de los bienes crea dificultades al momento de partir, colacionar y computar las legítimas. Además, produce anomalías, pues una misma disposición testamenta-ria puede resultar válida para los bienes sitos en un país y nula para los que están en otro, así como un mismo here-dero podría aceptar la herencia en un país y repudiarla en otro, en perjuicio de sus acreedores.(5) Sin embargo, el aca-démico también reconoce que la aplicación de la ley del foro donde se encuentra el bien permite una liquidación y ad-quisición más rápida de la herencia. Ofrece también mayor *337 seguridad al crédito público y a los terceros que tengan intereses en los bienes,(6) pues la intervención de diversas autoridades públicas en el proceso de interpretación de la última voluntad del causante, conservación de la herencia yacente y adjudicación de bienes del caudal plantea proble-mas prácticos más allá de las normas del conflicto de leyes.(7)
Según explica Simó Santoja, la solución que se selec-cione dependerá de la orientación de la doctrina y de la concepción jurídica sobre la sucesión en cada país.(8) Por eso, si “se concibe el patrimonio hereditario como una cosa que tiene una conexión estricta a los elementos personales, es inevitable inclinarse a favor de la ley personal”.(9) En ese sentido y partiendo de su concepción de la sucesión como una unidad, Simó Santoja indica que la sucesión debe considerarse, no como una serie de transmisiones de propiedades particulares, sino como la de un solo patrimo-nio que debe someterse a una sola ley. De esa forma se evitan distinciones en cuanto a los inmuebles que provocan dificultades prácticas para el pago de las deudas y el pro-ceso de partición, además de “discriminaciones entre acreedores y herederos de una misma sucesión”.(10)
Incluso los tratadistas de Estados Unidos, donde rige la doctrina germánica en el campo de las sucesiones, entien-den que es problemático contar con distintas masas suce-sorales para los bienes muebles y los inmuebles de cada lugar, regidas por leyes diferentes que pueden llamar a interpretar un testamento de forma contradictoria. Así, se preguntan qué sería más importante: ¿tratar de manera *338 uniforme los inmuebles de un lugar o tratar de manera uniforme los bienes de un caudal hereditario?(11)
En nuestro país, la profesora Martínez Moya considera que la segunda opción es la ideal, dado nuestro ordena-miento legal cuyas normas sobre sucesiones están diseña-das de acuerdo con la doctrina romana. Manifiesta que:
[E]n nuestra jurisdicción ahora mismo no están bien defini-das las normas que aplicarían en controversias sucesorales de conflicto de leyes. Entendemos que nuestro Código pide a gri-tos una reforma, como resultado de la cual debe adoptarse un estatuto que incorpore el sistema romano universalista que es el que está a tono con nuestra percepción del fenómeno sucesoral. El caudal hereditario debe verse como una masa única, independientemente de la naturaleza mueble o inmue-ble de los bienes y del lugar de su ubicación, a la que tendrá que aplicársele una sola ley que podría ser la de la nacionali-dad o la del domicilio del causante.(12)
Así lo disponía el Código Civil de Puerto Rico antes de la reforma de 1902. La primera oración de su Artículo 10 era igual a la del Código vigente: “Los bienes muebles están sujetos a la ley de la nación del propietario; los bienes in-muebles, a las leyes del país en que están sitos”.(13) Mas luego añadía: “Sin embargo, las sucesiones legítimas y las testamentarias, así respecto al orden de suceder como a la cuantía de los derechos sucesorios y a la validez intrínseca de sus disposiciones, se regularán por la ley nacional de la persona de cuya sucesión se trate, cualesquiera que sean la naturaleza de los bienes y el país en que se encuentren”. Esa excepción respecto a los casos sucesorales, que hacía que tanto los bienes muebles como los inmuebles que com-ponían un caudal se dividieran bajo la misma ley indepen-dientemente de donde ubicaran, se eliminó en 1902. Como *339 explicó el caso Bracons v. Registrador de San Juan, la Co-misión Codificadora decidió uniformar la norma para que todos los derechos, incluyendo los hereditarios, se rigieran por el principio del derecho privado estadounidense en cuanto a que los inmuebles se regularan por la ley del país en que están sitos.(14)
Cinco años después de la reforma, en Hecht v. Hecht et al., expresamos que, aunque a los inmuebles radicados en países extranjeros que formaban parte de la herencia se les tenían que aplicar las leyes del país en que estaban sitos, esos inmuebles se tenían que tomar en cuenta como inte-grantes de la masa total que dejó el difunto para efectos de la distribución del caudal hereditario.(15) Al mantener nuestra visión romana sobre las sucesiones, explicamos que “[e]l haber hereditario, sean cuales fueren los elemen-tos que lo integran, constituye una sola masa, y no puede liquidarse y partirse, incluyendo en esas operaciones unos bienes y excluyendo otros. Los derechos que sobre esa masa asistan a la demandante doña Margarita Hecht no pueden definirse y determinarse, teniendo en cuenta úni-camente los bienes hereditarios existentes en Puerto Rico, con exclusión de los que existan en el extranjero, pues se dividiría así la continencia [sic] del negocio con perjuicio de sus derechos”. (16)
En Cabrer v. Registrador, en 1982, concebimos nueva-mente el caudal del causante como una sola masa, inde- *340 pendientemente de la localización de los bienes. Sin embargo, realizamos el análisis sobre preterición que requería el caso aplicando la ley del sitio de los inmuebles.(17) La profesora Martínez Moya opina que la metodología empleada en ese caso contraviene todas las doctrinas sobre el asunto y que la contradicción en la juris-prudencia se debe a que nuestras normas internas sobre sucesiones no coinciden con nuestras reglas de conflicto de leyes para el plano internacional. Señala que la legislación vigente en Puerto Rico presenta “una paradoja: su ordena-miento sucesoral interno configura la sucesión según el modelo romano y, sin embargo, su estatuto de conflicto de leyes es de corte germánico”.(18)
Hoy, veinte años más tarde, nos enfrentamos nueva-mente a la disyuntiva entre la corriente romana y la germánica.
II
Cada país tiene sus normas de conflicto de leyes, con las cuales determina si para resolver una controversia va a aplicar el ordenamiento nacional o el de otro Estado. Las directrices sobre conflicto de leyes suponen que el tribunal que está atendiendo el caso tiene jurisdicción para ello por su relación con las personas o la materia.(19) El proceso de identificar la ley aplicable no supone grandes dificultades, *341 pues el ordenamiento jurídico de cada país dicta cuál debe utilizarse e incluye las excepciones de orden público.(20)
El problema puede suscitarse luego, cuando la sentencia de un país confiere o reconoce derechos que deben ser in-vocados en el extranjero; es decir, cuando una nación tiene que reconocer y aplicar, judicial o extrajudicialmente, lo resuelto en otro foro.(21) Pero, para esto, los ordenamientos proveen soluciones, como los procedimientos de reconoci-miento de sentencias, entre los que se encuentra el exequátur.(22) Y es que, como indica el profesor dominicano Arias Núñez, los Estados reconocen que hay casos en que es necesario que se adjudiquen derechos más allá de sus fronteras y que el hecho de que el efecto de una decisión se extienda fuera del territorio nacional no contraviene el principio de que la facultad para ejecutar una sentencia la tiene el Estado donde se lleva a cabo esa acción. Por eso, siempre que se cumpla con las condiciones establecidas, los Estados cooperan entre sí para la ejecución de sentencias extranjeras en su tierra.(23) No obstante, si la norma de conflicto de leyes que rige en el país donde se lleva a cabo el procedimiento judicial ordena que se aplique la ley del lugar donde la decisión debe hacerse cumplir, se puede constatar desde el principio que la sentencia no contra-venga el ordenamiento del otro foro. De ese modo se facilita su ejecución.
La norma de lex situs o lex rei sitae es una regla de *342 conflicto de leyes que se aplica cuando la decisión judicial que se emitirá tendrá efectos sobre bienes inmuebles. Esta regla, también conocida como el estatuto real, establece que los actos y contratos relativos a bienes inmuebles se rigen por las leyes del país en que éstos estén ubicados.(24) Por consiguiente, se debe utilizar la ley del sitio donde el in-mueble se encuentra para resolver controversias relaciona-das con ese bien.
En Estados Unidos, esta doctrina se ha mantenido por décadas y se fundamenta en que el Estado en el que se encuentra el inmueble tiene poder exclusivo para dictar las normas que lo regulan y tiene el interés más importante sobre lo que sucede con ese bien y con todas las propieda-des ubicadas en su territorio. Además, al evitar que una misma tierra esté sujeta a diferentes ordenamientos lega-les, se le provee certeza a los dueños, seguridad a los com-pradores y claridad a los examinadores de título y a los registradores.(25) Por eso, las cortes e instituciones del lu-gar en que se encuentra la propiedad pueden negarse a hacer valer un dictamen extranjero que no haya aplicado la ley del sitio.(26)
En el siglo 19, los tribunales estadounidenses comenza-ron a utilizar la norma de lex situs con dos vertientes: una de conflicto de leyes y otra jurisdiccional. A base de la se-gunda, en todo tipo de controversia que involucrara dere-chos reales, determinaban que solo el Estado donde estu- *343 viera localizado el bien tendría jurisdicción para atender el caso.(27) Los problemas prácticos que generó esta doctrina —entre los que se encontraba el que las partes se vieran obligadas a litigar el mismo asunto en distintos estados— llevaron a los tribunales a buscar salidas a través de la jurisdicción sobre la perso na y la teoría de que solo se estaba ordenando transferir el título legal sobre la cosa 0conveyance), con lo cual no se afectaba la propiedad directamente. Estas estrategias provocaron más confusión. Por ello, y dado que la doctrina de lex situs jurisdiccional no es un mandato obligatorio, su uso ha ido decayendo.(28)
La Opinión mayoritaria reconoce que la doctrina mo-derna se aleja de la norma rígida del situs y le da más importancia al análisis de los intereses de las partes, pero no lo toma en cuenta al resolver el caso.(29) Tampoco reco-noce que no estamos obligados a aplicar la doctrina del lex situs jurisdiccional, pues ésta no es imperativa. Menos aun cuando ni siquiera en Estados Unidos, donde se desarrolló, la siguen inflexiblemente,(30) y mucho menos cuando en Puerto Rico nunca se ha utilizado la vertiente jurisdiccio-nal de la norma de lex situs. Nuestra jurisprudencia de- *344 muestra que siempre hemos interpretado esta regla como una regla sobre conflicto de leyes.
En Colón et al. v. El Registrador, resuelto en 1915, se-ñalamos que había que aceptar, sin términos medios, la regla de lex rei sitae, en virtud de la cual no se puede “ ‘per-mitir que se verifique ninguna transacción relativa al tras-paso de cualquier derecho o título a la propiedad inmue-ble’ ” que se encuentra en un Estado si con ello se infringen las leyes de ese Estado.(31) En ese caso, confirmamos la determinación del Registrador de la Propiedad de Puerto Rico, de no dar paso a una cancelación de hipoteca, porque en el proceso celebrado en España en el que se ordenó la cancelación no se cumplió con un requisito que imponía el Código Civil de Puerto Rico, que era donde estaba ubicado el inmueble.
En todos los casos relacionados con la doctrina de lex situs que este Tribunal ha atendido posteriormente, la pre-gunta ha sido si se le reconoce validez a un negocio reali-zado o a un decreto dictado en otro país que afecta un in-mueble sito en Puerto Rico y contraviene nuestro ordenamiento legal.(32) Esto es, se ha utilizado la norma de lex situs en su vertiente de conflicto de leyes según los desarrollos del derecho internacional privado. Recientemente, en Roselló Puig v. Rodríguez Cruz, este Tribunal expresó que el Artículo 10 del Código Civil incorporó el principio de que las propiedades inmuebles se rigen por las leyes del lugar donde están sitas, con lo que se “evita que surjan conflictos entre estados hermanos en relación con la ley que deba aplicarse respecto a las propiedades inmuebles *345 sitas en éstos”.(33) Se indicaron las bondades de que un es-tado o territorio estadounidense aplique las leyes del es-tado en el que el inmueble en controversia está localizado y en ningún momento se mencionó la posibilidad de un pro-blema de falta de jurisdicción.(34)
En el contexto sucesoral, en Cabrer v. Registrador, des-cribimos como un principio harto conocido el que la trans-misión de inmuebles sitos en Puerto Rico se rige por nues-tras leyes y señalamos que los testamentos otorgados en el extranjero podían transmitir bienes inmuebles ubicados aquí siempre que al hacerlo no violen las leyes de Puerto Rico.(35) De esa forma, anunciamos que el principio de lex rei sitae aplica invariablemente si los bienes se encuentran en nuestro país o en el exterior; lo esencial es que el modo de transmisión de los inmuebles ubicados en un Estado sea compatible con el ordenamiento legal de ese Estado.
En el caso ante nuestra consideración, se alega que va-rios inmuebles pertenecientes al caudal del causante puer-torriqueño están sitos en República Dominicana. Por lo tanto, el tribunal de Puerto Rico que atiende el caso de partición debe utilizar la ley dominicana al adjudicar esos bienes.(36) Nuestra doctrina de lex rei sitae no priva de ju- *346 risdicción a nuestros tribunales; solo define la ley que éstos deben emplear, ya sea la propia o la foránea.
III
La determinación de la ley aplicable se ha utilizado como un factor útil para decidir cuál es el foro más ade-cuado para atender un litigio. No se trata de qué tribunal tiene jurisdicción, sino de en cuál de los que tienen juris-dicción es más práctico que se vea el caso. Por esto, los peticionarios recurrieron a la doctrina del forum non con-veniens en su alegato ante este Tribunal.(37) Esta doctrina, procedente del common law, fue incorporada a nuestro or-denamiento hace tres años, en Ramírez Sainz v. S.L.G. Cabanillas.(38)
*347 El análisis de forum non conveniens permite que, cuando foros alternativos tienen jurisdicción, el tribunal que tiene la relación más significativa con el caso sea el que lo resuelva, con el fin de reducir los costos, la comple-jidad y la duración de los procedimientos. Así, para favore-cer a las partes, un tribunal puede rehusar ejercer su ju-risdicción en circunstancias excepcionales cuando una parte se lo solicita y prueba que el otro foro con jurisdicción es claramente el más apropiado. En un caso en el que el tribunal de Puerto Rico determine que otro país o estado es el más apropiado para atender la controversia, debe deses-timar la demanda o paralizar los procedimientos hasta que el otro foro resuelva la controversia particular dentro del caso sobre la cual ese otro foro tiene mayor interés o relación. Por el contrario, cuando el tribunal de Puerto Rico concluya que el nuestro es el foro más adecuado, debe establecer conforme a qué normas va a resolver el caso, esto es, cuál es la ley aplicable.(39)
Para decidir cuál es el foro más apropiado se consideran factores como: si es conveniente para las partes litigar en ese lugar, la localización de las fuentes de prueba y los mecanismos para obtenerla, los términos prescriptivos aplicables, si es el momento oportuno para paralizar el pleito, el reconocimiento de sentencias en otros foros y la posibilidad de ejecución de sentencia.(40) En algunas oca-siones, también se toma en cuenta el estatuto de conflicto de leyes aplicable como consideración práctica, pues re- *348 sulta más cómodo que la disposición legal sea interpretada por los juzgadores que están acostumbrados a estudiarla.(41) No obstante, ninguno de los criterios es de-terminante y su peso depende de las circunstancias del caso.(42)
No hay duda de que, como bien señala la parte peticio-naria, Puerto Rico es el foro más apropiado para atender las controversias relacionadas con el caudal hereditario del señor Valencia Jiménez.(43) Nuestra jurisdicción tiene una relación más significativa con el caso, pues éste trata de problemas sobre los bienes que, mediante un testamento otorgado en Puerto Rico, dejó una persona que residía y falleció en Puerto Rico.(44) Además, la mayor parte de los bienes del caudal se encuentra en Puerto Rico y la acción fue instada en este país. Asimismo, llama la atención que el caso se está atendiendo en los tribunales puertorrique-ños hace más de 10 años y se ha llevado a cabo un descu-brimiento de prueba amplio, por lo que no es el momento oportuno para trasladar controversias del caso a otro foro. Cabe destacar también que no existe acción judicial alguna sobre las propiedades en litigio ante los tribunales de Re-pública Dominicana, contrario a lo que sucedía en el caso *349 Hecht v. Hecht et al., en el que el Tribunal tomó en consi-deración que ya se había iniciado un pleito de división de bienes en otro tribunal con jurisdicción, la corte civil de Ginebra.(45)
Entonces, de presentarse una petición de forum non conveniens, nuestro foro no debe rehusar ejercer jurisdic-ción en este caso. Aunque tanto Puerto Rico como Repú-blica Dominicana tienen jurisdicción sobre los bienes in-muebles en controversia, resulta más apropiado que Puerto Rico atienda la situación relacionada con los bienes dominicanos dentro del pleito sucesoral puertorriqueño. Claro está, los tribunales locales deberán aplicar las nor-mas dominicanas a los bienes inmuebles sitos en la isla vecina, según dispone el Artículo 10 de nuestro Código Civil.
IV
No es correcta la conclusión de la Opinión mayoritaria de que los tribunales de Puerto Rico no tienen autoridad para atender acciones de titularidad de inmuebles que un causante puertorriqueño deje en otro país. Pero aun si ese no fuera el fundamento para el procedimiento que formula, no puedo estar de acuerdo con su propuesta.
Según la opinión, cuando un causante domiciliado en Puerto Rico deje inmuebles en el extranjero, se abrirá una masa sucesoral por cada país donde haya este tipo de bie-nes y las partes deberán acudir a los tribunales de cada uno de esos lugares para que emitan dictámenes sobre la titularidad de los inmuebles. Luego, acudirán al tribunal en Puerto Rico para que se tome conocimiento judicial de *350 cada una de esas sentencias y deberán presentar prueba sobre el valor de los inmuebles adjudicados en el extranjero. Entonces, el tribunal de Puerto Rico deberá computar el valor de esos inmuebles en el caudal heredita-rio para tomarlos en cuenta en el proceso de partición y hacer los ajustes necesarios en la distribución de bienes.(46)
Con ese último paso, la Opinión persigue una solución coherente con nuestro ordenamiento sucesoral y más justa para todas las partes, por lo que me parece acertada su adopción como norma general.(47) Esto a pesar de que no siempre será posible dividir los bienes según dictan nues-tras normas para que la distribución sea más equitativa, pues no necesariamente habrán bienes suficientes en el caudal en Puerto Rico para compensar a un heredero por lo que otro heredero recibió por encima de su cuota debido a la aplicación de una ley extranjera a un inmueble de la masa hereditaria ubicado fuera de nuestro país.
Con lo que no estoy de acuerdo es con obligar a las par-tes a instar pleitos de partición independientes en cada foro en que el causante tuviera bienes inmuebles. Ello re-presenta un procedimiento más largo, más complejo y más costoso. Si lo que se busca es que la adjudicación de la titularidad del bien sea eficaz en el país donde la sentencia se va a ejecutar —por ejemplo, en el Registro de la Propie-dad donde se va a inscribir el inmueble — , nuestra norma de conflicto de leyes propende a ello al dictar que se apli- *351 que al inmueble la ley del lugar donde éste se en-cuentra.(48)
El procedimiento diseñado en la Opinión mayoritaria, además de poco conveniente, es innecesario. Reitero que los tribunales de Puerto Rico tienen jurisdicción para dis-tribuir los bienes inmuebles sitos en otras jurisdicciones que forman parte del conjunto de bienes que se tiene que dividir en un caso que está atendiendo nuestro foro. Nues-tra norma de lex situs solamente indica cuál ordenamiento legal deberá aplicar el juzgador de Puerto Rico a esos inmuebles. Los tribunales de primera instancia aplican las leyes de otras jurisdicciones constantemente, tanto en ca-sos de sucesiones como de otras materias. Aunque este pro-ceso no está exento de dificultades, pues requiere que las partes coloquen al tribunal en condición de emplear el De-recho extranjero y que el juzgador local se esfuerce para aplicar correctamente normas con las que probablemente no está familiarizado, es más viable que presentar pleitos en diversos países y esperar que todos ellos se resuelvan para proceder a la partición.
V
Como ya he expresado, al igual que la Opinión mayori-taria, confirmaría la Sentencia del foro apelativo en cuanto a la controversia relacionada con el descubrimiento y la presentación de prueba.
Sin embargo, no puedo aceptar el dictamen mayoritario que priva de jurisdicción a los tribunales de Puerto Rico para adjudicar sobre los inmuebles pertenecientes al caudal hereditario situados en el extranjero. Contrario a lo que afirma la Opinión mayoritaria, la doctrina de lex situs *352 no priva de jurisdicción a nuestro Foro en este caso, pues esa doctrina no tiene que ver con jurisdicción, sino sola-mente con cuál será la ley aplicable. Además, no solo se equivoca la Opinión en su razonamiento jurídico, sino que con ello instituye un proceso oneroso e inefectivo en ex-tremo para las partes. Por todo ello, respetuosamente disiento.

 S.L.G. Valencia v. García García, 187 D.P.R. 283, 297-298 (2012); Sentencia del Tribunal de Apelaciones Núm. KLCE200901806 de 30 de agosto de 2010, págs. 19-23, Apéndice de la Solicitud de certiorari, págs. 1951-1955.

 Véanse: L. Muñoz Morales, Reseña histórica y anotaciones al Código Civil de Puerto Rico, Río Piedras, Ed. Universidad de Puerto Rico, 1947, págs. 22-25; J. Trías Monge, El choque de dos culturas jurídicas en Puerto Rico, Hato Rey, Ed. Equity, 1991, págs. 81-100.

 Véanse, por ejemplo: Vilanova et al. v. Vilanova et al., 184 D.P.R. 824 (2012); Flecha v. Lebrón, 166 D.P.R. 330 (2005), Vda. de Ruiz v. Registrador, 93 D.P.R. 914 (1967); Mercado v. Mercado, 66 D.P.R. 811 (1947).

 Véase E. Martínez Moya, Cabrer v. Registrador: Un problema sucesoral de conflicto de leyes, 59 (Núm. 3) Rev. Jur. U.P.R. 557, 561-565 (1990).

 A. Miaja de la Muela, Derecho internacional privado II: parte especial, 9na ed., Madrid, Ed. Atlas, 1982, págs. 407-408.

 Íd., pág. 409.

 Íd., pág. 405.

s) V.L. Simó Santoja, Derecho sucesorio comparado, Madrid, Ed. Tecnos, 1968, págs. 169-177. No obstante, como señala Miaja de la Muela, “[l]a complejidad se acrecienta en Derecho Internacional Privado, al entrar en contacto ordenaciones sucesorias basadas en principios opuestos”. Miaja de la Muela, op. cit., pág. 404.

 Simó Santoja, op. cit., pág. 41.

 Íd.

 S.C. Symeonides, W. Collins Perdue y A.T. von Mehren, Conflict of Laws: American, Comparative, International, 2da ed., Minnesota, Ed. West, 2003, pág. 419.

 E. Martínez Moya, El derecho sucesorio puertorriqueño, 67 (Núm. 1) Rev. Jur. U.P.R. 1, 88 (1998).

 Art. 10 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 10.

 Bracons v. Registrador de San Juan, 24 D.P.R. 753, 757 (1917). Véanse, también: Cabrer v. Registrador, 113 D.P.R. 424, 434-435 (1982); Colón et al. v. El Registrador, 22 D.P.R. 369, 372-373 (1915). En el Proyecto para la Codificación del Derecho Internacional Privado en Puerto Rico, también se recomendó adoptar el principio de que los derechos reales sobre inmuebles localizados en Puerto Rico fue-ran gobernados por las leyes de Puerto Rico y que los derechos reales sobre inmue-bles ubicados fuera del país se rigieran por la ley que aplicarían los tribunales del Estado donde están sitos. Proyecto para la Codificación del Derecho Internacional Privado de Puerto Rico, Academia Puertorriqueña de Jurisprudencia y Legislación, marzo 1991, Art. 26. Véase, también, S.C. Symeonides, A Sourcebook for the Codification of Puerto Rican Private International Law, San Juan, Academia Puertorriqueña de Jurisprudencia y Legislación, págs. 2-24 y 139-187.

 Hecht v. Hecht et al., 12 D.P.R. 227, 237-238 (1907).

B) Íd., pág. 237.

 Cabrer v. Registrador, supra.

 Martínez Moya, Cabrer v. Registrador: Un problema sucesoral de conflicto de leyes, supra, póg. 560. Véase Íd., págs. 559-561 y 600-601.

 El problema de conflicto de jurisdicciones es inusual y se da mayormente cuando existen acuerdos de competencia judicial internacional, mediante los cuales un Estado pacta con otro u otros que limitará la extensión de su jurisdicción en cierto tipo de situaciones. Estos acuerdos también incluyen cláusulas sobre reconocimiento y ejecución de sentencias. C. Esplugues Mota y J.L. Iglesias Buhigues, Derecho in-ternacional privado, 5ta ed., Valencia, Ed. Tirant Lo Blanch, 2011, págs. 66-67.

 Las normas de conflicto de leyes no proveen la regla para resolver la con-troversia, sino que dirigen al juzgador al ordenamiento jurídico en el que debe bus-carla dependiendo de la situación presentada. Id., págs. 209-216. Los autores brin-dan como ejemplo que, si el caso se está atendiendo en España y la norma de conflicto española señala que la sucesión se rige por la ley del país de nacionalidad del causante, el juzgador español aplicará el Derecho de ese país: el alemán si el causante es alemán, el peruano si el causante es peruano. Íd., pág. 211.

 Esplugues Mota e Iglesias Buhigues, op. cit., págs. 67-68.

 Sobre el exequátur, véanse: Regla 55 de Procedimiento Civil, 32 L.P.R.A. Ap. V; Rodríguez Contreras v. E.L.A., 183 D.P.R. 505 (2011).

 L. Arias Núñez, Manual de derecho internacional privado, 5ta ed., Santo Domingo, 2010, pág. 355.

 Banco Popular v. Registrador, 172 D.P.R. 448, 454 (2007).

 Symeonides, Collins Perdue y von Mehren, op. cit., págs. 38-40 y 395, citando el tratado sobre conflicto de leyes de J.H. Beale. Los autores señalan que, a pesar de esto, hay ocasiones en que el situs no es el que más interés tiene; por ejemplo, en casos de familia o sucesiones, cuando todas las partes están domiciliadas en un lugar y la propiedad en controversia está en otro sitio, ¿qué pasa con los juicios valorativos encarnados en las leyes de la sociedad en la que viven las partes? Asi-mismo, puede haber contradicciones cuando aplica tanto la norma de regir la propie-dad por las leyes del sitio como la de interpretar un contrato según las leyes del lugar donde éste se hizo. Íd., págs. 39-40.

 Íd., pág. 39. Véase, además, M.J. Whineop, Conflicts in the Cathedral: Towards a Theory of Property Rights in Private International Law, 50 U. Toronto L.J. 41 (2000).

 R. Alden, Modernizing the Situs Rule for Real Property Conflicts, 65 Tex. L. Rev 585, 587-591 (1987).

 Id., págs. 598-611 y 621-633. Véase A.P. Dwyer II, The Situs Rule, 4 Conn. Prob. L.J. 325 (1989). “As was suggested by Professor Russell Weintraub, many states as well as the District of Columbia and Puerto Rico favor the use of a less territorial, more interest-analysis approach to answer some conflicts of law questions”. Dwyer II, supra, pág. 342.

 S.L.G. Valencia v. García García, Opinion del Tribunal, págs. 33-34.

 En los casos resueltos por el Tribunal Supremo de Estados Unidos en que se ha discutido este tema, es visible el problema del lex situs jurisdiccional y las incon-gruencias que resultan al seguir tratando de aplicar esa doctrina con múltiples excepciones. Por ejemplo, en Baker v. General Motors Corp., 522 U.S. 222, 235-236 (1998), se dijo que un tribunal de un estado no puede transferir el título de un inmueble situado en otro estado, pero sí puede adjudicar los derechos y las obliga-ciones de las partes respecto a ese bien y obligarlas a transferir el título sobre la propiedad. Asimismo, en Robertson v. Howard, 229 U.S. 254, 261 (1913), se deter-minó que la Corte de Quiebras en un estado tenía jurisdicción para ordenar la venta de una propiedad en otro estado porque el tipo de litigio le brindaba poder sobre todo el patrimonio del deudor, así como sobre la persona del síndico, a quien le podía ordenar que hiciera la transferencia de título. De esta forma se adjudica la propiedad sita en otro estado “indirectamente”.

 Colón et al. v. El Registrador, supra, págs. 374 y 376-377, citando el tratado sobre conflicto de leyes de Raleigh C. Minor.

 Véanse: Soto Hernández v. Registradora, 175 D.P.R. 575 (2009); Banco Popular v. Registrador, supra; Zarelli v. Registrador, 124 D.P.R. 543 (1989); Sucn. Evans v. Srio. de Hacienda, 108 D.P.R. 713 (1979); Pueblo v. Denis Rivera, 98 D.P.R. 704, 714 (1970); Martínez v. Vda. de Martínez, 88 D.P.R. 443 (1963); Armstrong v. Armstrong, 85 D.P.R. 404 (1962); Lókpez v. Sotelo, 70 D.P.R. 501 (1949); Babilonia v. Registrador, 62 D.P.R. 688 (1943); Rojas, Randall & Co. v. Registrador, 27 D.P.R. 21 (1919).

 (Énfasis suplido). Roselló Puig v. Rodríguez Cruz, 183 D.P.R. 81, 105 (2011).

 No se contempló que los tribunales de Puerto Rico no tuvieran jurisdicción para determinar a cuál de los excónyuges le pertenecía el bien inmueble sito en Florida que generó la disputa durante la división de bienes gananciales. De hecho, se adjudicó el título de la residencia, pues se concluyó que, dado que en Florida era válido el uso de un contrato para transmitir una propiedad conyugal, ésta “pasó a ser un bien privativo de la peticionaria” y solo restaba determinar el crédito que debía recibir el esposo por su aportación. Íd., págs. 117-118.

 Cabrer v. Registrador, supra, págs. 434-435.

 El estatuto real del Código Civil dominicano aplica la lex situs en su terri-torio: “Los bienes inmuebles, aunque sean poseídos por extranjeros, están regidos por la ley dominicana”. Art. 3 del Código Civil de la República Dominicana. La juris-prudencia dominicana ha interpretado que este artículo da una orden general; esto es, que los inmuebles extranjeros también se regirán por la ley del país en donde se encuentren. Arias Núñez, op. cit., pág. 263. Sin embargo, en cuanto a las sucesiones, “[l]a aplicación de la ley personal del causante [a la sucesión] es el principio jurídico que prevalece en el [derecho internacional privado] dominicano. Esto garantiza que si el [causante] tiene bienes, muebles o inmuebles, en distintos países, se les aplique la misma ley a todos; porque, de no ser así y se le aplicara la ley de la situación, *346 habría tantas leyes competentes como bienes distribuidos en distintos países”. J.M. Rosario, Tratado de derecho internacional privado, Santo Domingo, Ed. Jurídicas Trajano Potentini, 2005, pág. 411. Esto sugiere que, en un caso como el presente, de verse la controversia sobre un inmueble del caudal ubicado en República Domini-cana en ese país, pueda darse el reenvío; esto es, que, debido a que la ley del país donde está el bien hereditario ordena utilizar la ley personal del causante, termine el tribunal dominicano aplicando la ley de Puerto Rico. Por otro lado, el Código Busta-mente de 1928 sobre derecho internacional privado en América, del cual República Dominicana es signataria pero Estados Unidos no, establece que “en los juicios de testamentaría o ab intestato será juez competente el del lugar en que tuvo el finado su último domicilio” para solucionar conflictos de leyes. Art. 327 del Código Bustamante. Asimismo, el Código Civil dominicano señala que “[I]a acción de parti-ción y las cuestiones litigiosas que se susciten en el curso de las operaciones se someterán al tribunal del lugar en que esté abierta la sucesión”. Art. 822 del Código Civil de la República Dominicana. Véanse también los Artículos 718-892 del Código Civil dominicano, sobre su regulación de las sucesiones.

 En la práctica, una parte presenta una moción de desestimación basada en la doctrina de forum, non conveniens y, si logra probar que el foro es claramente inapropiado para atender la controversia y existe otro más idóneo, se desestima el caso para que sea presentado en otro foro. En el presente pleito, la parte recurrida no ha presentado este tipo de moción, pero ambas partes han discutido por qué la con-troversia se debe atender en Puerto Rico o en República Dominicana, aludiendo a los criterios de forum non conveniens. Además, la Opinión mayoritaria descarta la doc-trina de forum non conveniens a raíz de su conclusión de que Puerto Rico no tiene jurisdicción sobre la materia. Discuto la doctrina con el fin de aclarar que sí aplicaría en este caso, ya que la norma de lex situs no priva a Puerto Rico de jurisdicción, y utilizo los criterios que la rigen de forma ilustrativa.

 Ramírez Sainz v. S.L.G. Cabanillas, 177 D.P.R. 1 (2009). En ese caso, utili-zamos la doctrina para determinar cuál era el foro más apropiado para atender una controversia contractual entre un abogado dominicano y un ciudadano puertorri-queño relacionada con un bien inmueble sito en República Dominicana. Resolvimos *347 que Puerto Rico era un foro más conveniente que República Dominicana tras consi-derar que el litigio llevaba 10 años pendiente en Puerto Rico, la evidencia procedente de la isla vecina se había legalizado para presentarse aquí y los bienes disponibles para la ejecución de la sentencia se encontraban en Puerto Rico. Véase, también, Bonet Cardona v. Holahan et al., 181 D.P.R. 582, 599-602 (2011).

 Ramírez Sainz v. S.L.G. Cabanillas, supra, págs. 13-14 y 31-38. Para esta determinación se considera la excepción reconocida en el derecho internacional pú-blico de no aplicar las normas extranjeras cuando éstas violan el orden público local, aunque una disposición de conflicto de leyes indique que corresponde aplicar la ley extranjera.

 Íd., págs. 38-39. Véase además, en general, R.A. Brand y S.R. Jablonski, Forum Non Conveniens; History, Global Practice, and Future Under the Hague Convention on Choice of Court Agreements, Nueva York, Oxford University Press, 2007.

 M. Karayanni, “Forum Non Conveniens” in the Modern Age, Nueva York, Transnational Publishers, 2004, págs. 205-209.

 Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981). En este caso, el Tribunal Supremo de Estados Unidos indicó que, para determinar cuál es el foro más conve-niente, no se debe utilizar el criterio de cuál es el foro más favorable para el deman-dante de acuerdo con la norma de conflicto de leyes aplicable en cada uno. “In fact, if conclusive or substantial weight were given to the possibility of a change in law, the forum non conveniens doctrine would become virtually useless. Jurisdiction and venue requirements are often easily satisfied. As a result, many plaintiffs are able to choose from among several forums. Ordinarily, these plaintiffs will select that forum whose choice-of-law rules are most advantageous. Thus, if the possibility of an unfavorable change in substantive law is given substantial weight in the forum non conveniens inquiry, dismissal would rarely be proper... If the possibility of a change in law were given substantial weight, deciding motions to dismiss on the ground of forum non conveniens would become quite difficult. Choice-of-law analysis would become extremely important, and the courts would frequently be required to interpret the law of foreign jurisdictions”. Íd., págs. 250-251.

 Solicitud de certiorari, pág. 14.

 En el presente caso, la relación del causante con la República Dominicana consiste en que éste tenía subsidiarias de su negocio en ese país.

 En Hecht v. Hecht et al., supra, el Tribunal decidió que, para la adjudicación de la herencia en Puerto Rico, se considerarían todos los bienes del caudal, aunque a los inmuebles ubicados en países extranjeros se les aplicarían las leyes de esos Es-tados y no se intervendría con las adjudicaciones que hubiesen hecho ya los tribuna-les de Suiza, donde había residido el causante y estaba pendiente otro pleito sobre bienes del caudal.

 S.L.G. Valencia v. García García, supra, págs. 326-329.

 En otros países se han acogido normas similares para adaptar el resultado de la aplicación de las normas de conflicto de leyes al ordenamiento nacional en el área de sucesiones y evitar injusticias entre herederos. Por ejemplo, en Francia existe la figura del prélevement, mediante la cual a los herederos beneficiados por la división hecha a base de una ley extranjera se les descuenta del total de bienes sometidos a la ley francesa lo que se les adjudica en la otra nación, con el fin de proteger los derechos reconocidos por la ley francesa de quienes se ven peijudicados por la aplicación de la ley extranjera. Véase Martínez Moya, Cabrer v. Registrador: un problema sucesoral de conflicto de leyes, supra, págs. 591-594 y 601-602. Tam-bién existe el principio de elección inglés, que dicta que los herederos que resulten beneficiados por la ley del sitio de los inmuebles en el extranjero accedan a compen-sar a los demás herederos por el valor de éstos al momento de partir los bienes regidos por la ley inglesa. Íd., pág. 590.

 El hecho de que un tribunal de Puerto Rico esté atendiendo el caso no impide que se puedan solicitar certificaciones sobre el estatus del inmueble o las leyes aplicables al foro en el que se encuentra el bien. Véanse: Esplugues Mota e Iglesias Buhigues, op. cit., págs. 226-251; Rosario, op. cit., págs. 434-441.